SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State of New Jersey v. James Grate; State of New Jersey v. Fuquan Cromwell (A-47/48-13) (072750)**

**Argued October 21, 2014 -- Decided January 15, 2015**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers (1) whether the "knowingly" mens rea requirement of N.J.S.A. 2C:39-5(e)(1) applies to both the possession of the firearm and the defendant's presence at an educational institution; (2) the constitutionality of N.J.S.A. 2C:39-5(i)'s mandatory minimum sentence in light of in Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013); and (3) the propriety of a defendant's sentence.

Defendants Fuquan Cromwell and James Grate were stopped by police officers on the campus of Drew University during the attempted robbery of an acquaintance. Defendants were charged with various offenses, including second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and third-degree unlawful possession of a weapon at an educational institution, N.J.S.A. 2C:39-5(e)(1). With regard to the latter, the trial judge instructed the jury that the State must prove "the defendant possessed the firearm in or upon the buildings or grounds of any school, college, university, or other educational institution." The judge did not ask the jury to decide whether defendants were aware that they were on the property of an educational institution. The jury found defendants guilty of second-degree unlawful possession of a weapon and third-degree unlawful possession of a weapon at an educational institution, and acquitted them of the remaining charges.

At the sentencing hearing, Corporal Edwin Santana testified that defendants admitted they were members of a local chapter of the Crips street gang and that both defendants had tattoos denoting their membership. The judge found that aggravating factors five, a substantial likelihood that defendants were involved in organized criminal activity, N.J.S.A. 2C:44-1(a)(5), three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), and nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9), applied to both defendants; that aggravating factor six, the extent of the defendant's prior criminal record, N.J.S.A. 2C:44-1(a)(6), applied solely to Cromwell; and that no mitigating factors applied. After merging the possession convictions, the court sentenced Grate and Cromwell to eight and nine years in prison, respectively. The court also ordered mandatory five-year parole disqualifiers under N.J.S.A. 2C:39-5(i), finding it substantially likely that defendants were involved in organized criminal activity.

On appeal, defendants contended, among other things, that the jury charge for unlawful possession of a weapon at an educational institution improperly failed to instruct the jury that the "knowingly" mens rea requirement applied to the locational element of the crime. The Appellate Division rejected defendants' arguments and affirmed their convictions and sentences. The Court entered limited grants of certification. State v. Cromwell, 216 N.J. 361 (2013); State v. Grate, 216 N.J. 362 (2013).

**HELD**: (1) In order to prove a violation of N.J.S.A. 2C:39-5(e)(1), the State must prove beyond a reasonable doubt both that a defendant knowingly possessed a firearm and that he or she did so while knowingly on the property of an educational institution; (2) because the mandatory minimum sentence under N.J.S.A. 2C:39-5(i) is based on a judicial finding of fact, rather than a finding by the jury, it is unconstitutional under Alleyne; and (3) Grate's sentence was not excessive because the trial court's analysis of the aggravating and mitigating factors was supported by the record.

1. N.J.S.A. 2C:39-5(e)(1) states, in relevant part, that "[a]ny person who knowingly has in his possession any firearm in or upon any part of the buildings or grounds of any school, college, university or other educational institution without the written authorization of the governing officer of the institution, is guilty of a crime of the third degree." Whether the culpability requirement of "knowingly" applies to the locational element of N.J.S.A. 2C:39-5(e)(1) is a question of statutory interpretation. As such, the Court attempts to discern and implement the Legislature's intent by first looking at the statute's plain language and, if that language if ambiguous, by looking to

extrinsic sources. The Code prescribes rules for the "[c]onstruction of statutes with respect to culpability requirements." N.J.S.A. 2C:2-2(c). N.J.S.A. 2C:2-2(c)(1) applies to statutes that provide a culpability requirement as to one but not all elements of the offense. N.J.S.A. 2C:2-2(c)(1) requires that such statutes be interpreted to apply the stated culpability requirement to every material element of the offense if the offense does not distinguish among them, and "unless a contrary purpose plainly appears." Because N.J.S.A. 2C:39-5(e)(1) criminalizes even otherwise lawful possession of a weapon if a defendant possesses the weapon at an educational institution, the locational element is "material." In addition, the language of N.J.S.A. 2C:39-5(e)(1) reveals no indication that the "possession" element has been distinguished from the "location" element. Both elements are contained within the same clause, preceded by the adverb "knowingly." Finally, no contrary purpose to applying the knowing requirement to both material elements is plainly indicated. As a result, N.J.S.A. 2C:39-5(e)(1)'s knowing requirement applies to both possession of a firearm and being at an educational institution. (pp. 13-16)

2. The Court rejects that the Legislature intended a defendant to be strictly liable for the locational element based on the "essentially regulatory nature" of our gun control laws. Although the Court has described Chapter 39 sections 39-3 and 39-5 as containing "essentially regulatory offenses," in doing so it explained that "they prohibit possession of firearms and other weapons without regard to the individual's intent or purpose in possessing them." State v. Harmon, 104 N.J. 189, 197 (1986). Because N.J.S.A. 2C:39-5(e)(1), in conjunction with N.J.S.A. 2C:2-2(c)(1), requires only that the State prove defendants knowingly possessed the weapon while knowingly at an educational institution, defendants' intent or purpose in possessing the gun is not at issue here. The regulatory nature of the offense does not nullify N.J.S.A. 2C:2-2(c)(1)'s rule of construction, nor does it alleviate the State of its burden to prove defendants acted with the requisite culpability as to each element of the offense. In addition, State v. Smith, 197 N.J. 325 (2009), does not affect the Court's interpretation of N.J.S.A. 2C:39-5(e)(1). In Smith, the Court interpreted a different criminal statute and, based on statutory phrasing materially different than that found in N.J.S.A. 2C:39-5(e)(1), held that the State did not have to prove that the defendant knew that the firearm he possessed had been defaced. Id. at 326-27, 331-32. Because the State was required to prove that defendants were knowingly at an educational facility in order to obtain a conviction under N.J.S.A. 2C:39-5(e)(1), the jury instructions with respect to defendants' convictions under N.J.S.A. 2C:39-5(e)(1) warrant reversal, and the Court vacates those convictions and remands for resentencing on the unlawful possession charges. (pp. 16-19)

3. N.J.S.A. 2C:39-5(i) requires the sentencing court to impose a period of parole ineligibility "if the court finds" a substantial likelihood that the defendant is involved in organized criminal activity. Alleyne held that "any fact that increases the mandatory minimum sentence is an 'element' that must be submitted to the jury" to be found beyond a reasonable doubt. 133 S. Ct. at 2156. Alleyne therefore renders the imposition of a mandatory minimum sentence under N.J.S.A. 2C:39-5(i) unconstitutional. The Court acknowledges that, "[i]n appropriate cases, a court has the power to engage in judicial surgery or the narrow construction of a statute to free it from constitutional doubt or defect." State v. Fortin, 198 N.J. 619, 630 (2009) (quoting N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 75 (1980)) (internal quotation marks omitted). However, this procedure applies only "if we fairly can do so." Id. at 631. Here, N.J.S.A. 2C:39-5(i) unambiguously requires the imposition of a mandatory minimum sentence based on a judicial finding of fact. Requiring a jury rather than a judge to make such a finding would not merely be severing a constitutionally infirm portion of the sentencing statute, it would be rewriting its essential requirements. That determination is for the Legislature. The Court vacates defendants' sentences and remands for resentencing for the unlawful possession convictions, without consideration of the mandatory minimum sentence under N.J.S.A. 2C:39-5(i) and without the empaneling of a sentencing jury. (pp. 19-23)

4. Grate claims that his sentence was excessive. An appellate court reviews the trial court's sentencing determination under a deferential standard of review and is bound to affirm the sentence as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record. The trial court's findings that aggravating factors three, five, and nine applied, and no migrating factors applied, were amply supported by the record. Although a judicial finding of aggravating factor five cannot be the basis of a mandatory minimum sentence, the sentencing court may nevertheless consider that factor when deciding what sentence to impose within the statutory range. With the exception of the mandatory minimum sentence imposed pursuant to N.J.S.A. 2C:39-5(i), the Court affirms Grate's sentence. (pp. 23-26)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** for a new trial on the charge of unlawful possession of a weapon at an educational facility and for resentencing consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

JAMES GRATE,

    Defendant-Appellant.

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

FUQUAN CROMWELL, (a/k/a
FUGUAN CROMWELL, FUQUAN A.
CROMWELL, SAMAAD CROMWELL,
SAMAD CROMWELL, SAMAAD
LATHER, SAMADD N. J.L.,
SAMAAD N. LATHER),

    Defendant-Appellant.

        Argued October 21, 2014 – Decided January 15, 2015

        On certification to the Superior Court,
        Appellate Division.

        Joshua D. Sanders, Assistant Deputy Public
        Defender, argued the cause for appellant
        Fuquan Cromwell (Joseph E. Krakora, Public
        Defender, attorney).

        Al Glimis, Assistant Deputy Public Defender,
        argued the cause for appellant James Grate
        (Joseph E. Krakora, Public Defender,
        attorney; Mr. Glimis and Kevin G. Byrnes,
        Designated Counsel, on the briefs).

John K. McNamara, Jr., Assistant Prosecutor/Special Deputy Attorney General, argued the cause for respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; Mr. McNamara and Erin Smith Wisloff, Assistant Prosecutor/Special Deputy Attorney General, on the brief).

Jeffrey S. Mandel argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Cutolo Mandel, attorneys; Mr. Mandel and Andrew Stein, on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Hoffman, Acting Attorney General, attorney).

JUSTICE SOLOMON delivered the opinion of the Court.

Following an attempted robbery of an acquaintance, defendants Fuquan Cromwell and James Grate were stopped by police officers on the campus of Drew University. The officers discovered a gun under the driver's seat of the acquaintance's car within reach of defendants. Defendants were arrested and charged in a twelve-count indictment with various offenses, including second-degree unlawful possession of a weapon and third-degree unlawful possession of a weapon at an educational institution.

2

Defendants were tried jointly. The trial court in its charge to the jury did not state that to find defendants guilty of unlawful possession of a weapon at an educational facility, N.J.S.A. 2C:39-5(e)(1), it must find defendants knew they were at an educational facility. The jury convicted defendants of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and third-degree unlawful possession of a weapon at an educational institution, N.J.S.A. 2C:39-5(e)(1). Cromwell, who had a prior felony conviction, was also convicted under N.J.S.A. 2C:39-7(b)(1), which bars persons convicted of any of the offenses enumerated in the statute from possessing a weapon.

At the sentencing hearing, a witness testified that defendants were members of a local chapter of the Crips street gang. The trial court concluded that defendants were involved in organized criminal activity, a finding requiring the imposition of a mandatory minimum sentence under N.J.S.A. 2C:39-5(i). Their convictions and sentences were affirmed on appeal, and we granted certification to resolve three issues.

The first issue requires us to construe the culpability requirement under N.J.S.A. 2C:39-5(e)(1), which criminalizes the knowing possession of a weapon at an educational institution. We hold that in order to prove a violation of N.J.S.A. 2C:39-5(e)(1), the State must prove beyond a reasonable doubt both that a defendant knowingly possessed a weapon and that he or she

3

did so while knowingly on the property of an educational institution. The jury instructions here, which did not specify that the jury was required to find defendants were knowingly at an educational institution, were therefore flawed, and defendants' convictions under N.J.S.A. 2C:39-5(e)(1) must be vacated.

Second, we consider the constitutional validity of N.J.S.A. 2C:39-5(i) in light of the recent Supreme Court decision in Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The Alleyne Court held that the imposition of a mandatory minimum sentence based upon a fact that was not submitted to the jury for determination beyond a reasonable doubt violates the Sixth Amendment right to a jury trial. Id. at __, 133 S. Ct. at 2155, 186 L. Ed. 2d at 321. The mandatory minimum sentence under N.J.S.A. 2C:39-5(i) is based on a judicial finding of fact and cannot survive constitutional scrutiny. We therefore vacate defendants' sentences and remand for resentencing on the unlawful possession of a weapon convictions.

The third issue is the propriety of Grate's sentence. Because we find the court's findings were supported adequately by evidence of record, we reject Grate's argument that his sentence was excessive and affirm as to the trial court's weighing and analysis of factors applicable to Grate's sentence.

4

I.

A.

The following facts are derived from the testimony given at trial. In December 2008, Cromwell, Grate, and Cromwell's younger brother, J.L., approached C.A. while he was refueling his car at a gas station. Cromwell asked C.A. to give them a ride, and because C.A. knew Cromwell, he agreed. Soon after driving away, Cromwell asked C.A. to give them money. C.A., believing Cromwell was joking, ignored the requests. Cromwell then pulled out a gun, pointed it at C.A.'s head, and told him to "[g]et the money up." Because C.A. had no money with him and feared for his life, he offered to drive to Drew University to retrieve a credit card from his girlfriend, who lived on campus.

C.A. drove to the university, passed through a security checkpoint, and parked outside of his girlfriend's residence hall. Although C.A.'s girlfriend was not home at the time, her roommate allowed C.A. and Cromwell into the room. While searching for his girlfriend's credit card, C.A. surreptitiously phoned William Humphries, a New Jersey State Police Detective with whom C.A. was familiar from a prior arrest. Detective Humphries did not answer, but called C.A. back soon thereafter. C.A., claiming he was speaking to his uncle, was able to tell Detective Humphries that he was being threatened by people who

5

were demanding money from him.  Eventually, C.A.'s girlfriend arrived and gave C.A. her credit card.

C.A. and Cromwell returned to C.A.'s car, but before they could depart, Sergeant Joseph Cirella of the Madison Police Department arrived and ordered everyone out of the car.  Before complying, defendants and J.L. told C.A. that, "if anything [goes] down, this is your gun.  It's our word against yours." They got out of the car, and Sergeant Cirella had them lie face down on the ground.  After backup officers arrived and placed C.A. in the backseat of the police cruiser, he reported that there was a gun inside his car.

During a brief search of C.A.'s car, the officers found a loaded nine-millimeter handgun under the driver's seat.  All four men were handcuffed and taken to the police station, and C.A.'s car was impounded.  Shortly thereafter, Detective Humphries arrived and drove C.A. home.

Defendants were each indicted on charges of first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2), (11); first-degree carjacking, N.J.S.A. 2C:15-2(a)(1), (2), (4); first-degree robbery, N.J.S.A. 2C:15-1(a)(2); third-degree terroristic threats, N.J.S.A. 2C:12-3(a); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and third-degree unlawful possession of a weapon at an educational institution, N.J.S.A.

6

2C:39-5(e)(1). Cromwell was charged separately with second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b).

At trial, it was revealed that no latent fingerprints were found on the gun because the textured surface of the handle made fingerprints difficult to detect. Sergeant Cirella confirmed that the gun was found under the driver's seat and was accessible to anyone riding in the backseat, but was difficult to reach from the driver's seat.

Testifying in his own defense, Grate denied that anyone had pulled a gun on C.A. or demanded money from him. He claimed that Cromwell had asked C.A. to give J.L. a ride home, and that C.A. agreed to do so after he visited his cousin at college. Grate stated that he believed C.A. was traveling to his cousin's home, and that he did not realize C.A. was traveling to a college campus. He denied ever seeing the gun before appearing in court for trial.

At the charge conference, the trial judge, noting that there is no model jury charge for unlawful possession of a weapon at an educational institution, settled on an instruction that "has been drafted right out of the statute." Without objection, the judge instructed the jury that the State must prove "the defendant possessed the firearm in or upon the buildings or grounds of any school, college, university, or

7

other educational institution. In this case, the grounds of Drew University." The judge did not ask the jury to decide whether defendants were aware that they were on the property of an educational institution.

The jury found defendants guilty of second-degree unlawful possession of a weapon and third-degree unlawful possession of a weapon at an educational institution, but acquitted them of the remaining charges. Cromwell later pled guilty to the separate second-degree certain persons charge.

B.

At the sentencing hearing, the trial judge heard testimony by Corporal Edwin Santana that defendants admitted they were members of a local chapter of the Crips street gang known as "5 Deuce Hoova Crip" and that both defendants had a large "C" tattooed on their chests, which denotes membership in that gang. Corporal Santana then opined that, based upon his experience, the Crips street gang is involved in organized criminal activity. Relying on Corporal Santana's testimony, the judge found aggravating factor five, a substantial likelihood that defendants were involved in organized criminal activity, N.J.S.A. 2C:44-1(a)(5), applied to both defendants.

The court also found aggravating factors three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), and nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9),

8

applied to both defendants.  Next, the court found aggravating factor six, the extent of the defendant's prior criminal record, N.J.S.A. 2C:44-1(a)(6), applied solely to Cromwell based upon his three prior indictable convictions.  The court found no mitigating factors applied to either defendant.

After merging their convictions for possession while at an educational institution with their convictions for unlawful possession of a weapon, the court sentenced Grate and Cromwell to eight and nine years in prison, respectively.  Having found that it was substantially likely defendants were involved in organized criminal activity, the court made both sentences subject to the mandatory five-year parole disqualifier under N.J.S.A. 2C:39-5(i).  In accordance with his plea agreement, the court also sentenced Cromwell to a consecutive eighteen-month prison sentence with no parole eligibility on the certain-persons conviction.

C.

On appeal, defendants contended, among other things, that the jury charge with respect to the unlawful possession of a weapon at an educational institution was erroneous because it failed to instruct the jury that in order to convict defendants of that offense the State was required to prove that defendants knew they were at an educational institution.  After consolidating their appeals, the Appellate Division rejected

9

defendants' arguments and affirmed their convictions and sentences in an unpublished opinion.

Cromwell filed a petition for certification with this Court, raising the mens rea argument.  In response to the United States Supreme Court decision in Alleyne, which was released five days after he filed his initial petition, Cromwell filed a supplemental petition arguing that the mandatory minimum sentence imposed under N.J.S.A. 2C:39-5(i) was unconstitutional. We granted Cromwell's petition, limited to the issues of whether "the 'knowingly' mens rea requirement of N.J.S.A. 2C:39-5(e)(1), third-degree unlawful possession of a weapon at an education institution, appl[ies] to both the possession of the firearm and the [defendant's] presence at an educational institution"; whether the sentencing court erred "in finding and applying the aggravating factor of N.J.S.A. 2C:44-1(a)(5) (substantial likelihood that defendant is involved in organized criminal activity)"; and whether "the decision in Alleyne[, supra,] render[s] the imposition of a mandatory minimum sentence invalid under the Sixth Amendment of the United States Constitution." State v. Cromwell, 216 N.J. 361 (2013) (third alteration in original).

Separately, Grate filed a petition for certification asserting that his sentence was excessive, and joined in Cromwell's Alleyne argument.  Initially, we granted

10

certification "limited to the issue of whether [Grate's] sentence was excessive." State v. Grate, 216 N.J. 362 (2013). Grate subsequently filed a motion to expand our grant of certification to include the mens rea argument. By order dated April 11, 2014, we expanded our limited grant of Grate's petition to include the mens rea argument raised by Cromwell.

We also granted motions by the Association of Criminal Defense Lawyers (ACDL), the American Civil Liberties Union (ACLU), and the Attorney General to appear as amici curiae.

## II.

### A.

With respect to the mens rea requirement of N.J.S.A. 2C:39-5(e)(1), both defendants and the ACDL contend the trial court improperly interpreted the statute to require the State to prove only that they knowingly possessed a weapon and not that they possessed the weapon while knowingly at an educational facility. Defendants rely on N.J.S.A. 2C:2-2(c)(1), which provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears." Arguing that the locational element of this offense is material and that the statute fails to distinguish between its material elements,

11

defendants maintain the State was required to prove that defendants knowingly possessed a weapon and that they did so while knowingly at an educational institution.

Defendants also rely on N.J.S.A. 2C:2-2(c)(3), which imposes a "knowing" culpability requirement where a statute fails to specify a culpability requirement. Defendants therefore contend that the State had to prove beyond a reasonable doubt that they were knowingly present at an educational facility, and that the trial court's failure to instruct the jury regarding that burden constitutes plain error.

The State counters that the plain language of N.J.S.A. 2C:39-5(e)(1) unambiguously provides a mens rea requirement to the element of possession only, and that the locational element merely describes the circumstances of the possession. The State analogizes this statute to N.J.S.A. 2C:39-3(d), which states that "[a]ny person who knowingly has in his possession any firearm which has been defaced . . . is guilty of a crime of the fourth degree." The State relies upon State v. Smith, 197 N.J. 325, 332 (2009), a case in which we interpreted N.J.S.A. 2C:39-3(d) to require proof only that a defendant knowingly possessed a firearm, and not that the defendant knew the firearm was defaced. The State argues that N.J.S.A. 2C:39-5(e)(1), like N.J.S.A. 2C:39-3(d), contains an independent clause that includes a mens rea requirement, followed by a subordinate

12

clause containing no mens rea requirement.  The State adds that the regulatory nature of this State's gun control laws is largely unconcerned with the intent of the individual carrying a firearm.

B.

Whether the culpability requirement of "knowingly" applies to the locational element of N.J.S.A. 2C:39-5(e)(1) is a question of statutory interpretation.  As such, we review the dispute de novo, unconstrained by deference to the decisions of the trial court or the appellate panel.  State v. Drury, 190 N.J. 197, 209 (2007).  In doing so,

> we attempt to discern and implement the Legislature's intent.  Basic techniques of statutory interpretation first require us to look at a statute's plain meaning, and, "[i]f the meaning of the text is clear and unambiguous on its face, [we] enforce that meaning."  If the language is ambiguous or "admits to more than one reasonable interpretation, we may look to sources outside the language to ascertain the Legislature's intent."  Such extrinsic sources, in general, may include the statute's purpose, to the extent that it is known, and the relevant legislative history.
>
> [Ibid. (internal citations omitted).]

Furthermore, "[w]hen interpreting a penal statute, such as the one we consider here, if plain meaning and extrinsic sources are inadequate, we then 'employ the canon of statutory construction that counsels courts to construe ambiguities in penal statutes

13

in favor of defendant.'" Id. at 209-10 (quoting State v. Reiner, 180 N.J. 307, 311 (2004) (footnote omitted)).

With those principles in mind, we turn to the statutory language at issue here. N.J.S.A. 2C:39-5(e)(1) states, in relevant part, that "[a]ny person who knowingly has in his possession any firearm in or upon any part of the buildings or grounds of any school, college, university or other educational institution without the written authorization of the governing officer of the institution, is guilty of a crime of the third degree."

The Code prescribes rules for the "[c]onstruction of statutes with respect to culpability requirements." N.J.S.A. 2C:2-2(c). N.J.S.A. 2C:2-2(c)(3) addresses "statutes not stating [a] culpability requirement." Because N.J.S.A. 2C:39-5(e)(1) plainly sets forth a mens rea requirement for the first element of this offense, the Appellate Division correctly determined that N.J.S.A. 2C:2-2(c)(3) is inapplicable.

As set forth above, N.J.S.A. 2C:2-2(c)(1) applies to statutes that provide a culpability requirement as to one but not all elements of the offense. Specifically, N.J.S.A. 2C:2-2(c)(1) requires the statute to be interpreted to apply the stated culpability requirement as to every material element of the offense if the offense does not distinguish among them, and "unless a contrary purpose plainly appears."

14

The State does not dispute that the N.J.S.A. 2C:39-5(e)(1) locational element is "material." The Code defines "[m]aterial element" as "an element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with (1) the harm or evil[] . . . sought to be prevented, or (2) the existence of a justification or excuse." N.J.S.A. 2C:1-14(i). Because N.J.S.A. 2C:39-5(e)(1) criminalizes even otherwise lawful possession of a weapon if a defendant possesses the weapon at or on the grounds of an educational institution, we agree that the circumstances of the possession are material to the offense. See State v. Harmon, 104 N.J. 189, 202-03 (1986) (finding a defendant's intent to use a weapon for an unlawful purpose "clearly a material element" of the offense of possession of a weapon for an unlawful purpose).

The Appellate Division found N.J.S.A. 2C:2-2(c)(1) "does not apply because N.J.S.A. 2C:39-5(e)(1) distinguishes 'among the material elements' of the offense." However, careful review of the language of N.J.S.A. 2C:39-5(e)(1) reveals no indication that the "possession" element is clearly distinguishable from the "location" element. Both elements are contained within the same clause, preceded by the adverb "knowingly." We therefore reject the Appellate Division's conclusion that N.J.S.A. 2C:2-2(c)(1) does not apply, and find N.J.S.A. 2C:39-5(e)(1) does not

15

distinguish between its material elements.  As a result, to obtain a conviction under N.J.S.A. 2C:39-5(e)(1) the State was required to prove defendants knowingly possessed a firearm while knowingly at an educational institution unless the statute plainly evidences a contrary purpose, N.J.S.A. 2C:2-2(c)(1).

We find no such contrary purpose is plainly indicated.  The State, emphasizing the "essentially regulatory nature" of our gun control laws, urges us to consider N.J.S.A. 2C:39-5(e)(1) in conjunction with other sections of Chapter 39 to find the Legislature intended a defendant to be strictly liable for the locational element of N.J.S.A. 2C:39-5(e)(1).  Although we have described sections 39-3 and 39-5 as containing "essentially regulatory offenses," in doing so we explained that "they prohibit possession of firearms and other weapons without regard to the individual's intent or purpose in possessing them." Harmon, supra, 104 N.J. at 197; accord State v. Brims, 168 N.J. 297, 313 (2001).

The State correctly notes that the offense at issue here is distinguishable from the offense of possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(d), in that the State need not prove defendants' intent or purpose in possessing the gun.  However, N.J.S.A. 2C:39-5(e)(1), in conjunction with N.J.S.A. 2C:2-2(c)(1), requires only that the State prove defendants knowingly possessed the weapon while knowingly at an educational

16

institution.  A person acts "knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."  N.J.S.A. 2C:2-2(b)(2).  Accordingly, defendants' intent or purpose in possessing the gun is not at issue here -- only that defendants were aware of what they were doing and where they were doing it.  The regulatory nature of the offense does not nullify N.J.S.A. 2C:2-2(c)(1)'s rule of construction, nor does it alleviate the State of its burden to prove defendants acted with the requisite culpability as to each element of the offense.

The State also argues that our decision in Smith, supra, requires a finding that the Legislature did not intend the knowing culpability requirement to apply to the locational element of N.J.S.A. 2C:39-5(e)(1).  In Smith, we considered and rejected a defendant's claim that N.J.S.A. 2C:39-2(d), which prohibits any person from "knowingly ha[ving] in his possession any firearm which has been defaced," required the State to prove he knew the firearm had been defaced.  Smith, supra, 197 N.J. at 326-27.

In Smith, we began our analysis by first determining what the term "knowingly" modified.  Id. at 331.  We noted "the Legislature placed the term 'knowingly' immediately before the

phrase, 'has in his possession a firearm,'" followed by the "subordinate phrase, 'which has been defaced,' that describes further the nature of the proscribed item." Id. at 332.

The State argues that here, as in Smith, the statute at issue places the term "knowingly" immediately before the phrase "has in his possession any firearm," followed by the subordinate clause "in or upon any part of the buildings or grounds of any school, college, university or other educational institution." However, the locational element of N.J.S.A. 2C:39-5(e)(1) is not contained in a subordinate clause. Rather, as set forth above, "in or upon any part" of an educational facility expresses a separate material element of the offense. Indeed, it is the locational element of N.J.S.A. 2C:39-5(e)(1) that distinguishes ordinary possession, which need not be unlawful itself, from the wrongdoing sought to be addressed under the statute, namely the harm possession of a firearm presents at a setting like an educational facility. Thus, unlike the statute at issue in Smith, N.J.S.A. 2C:39-5(e)(1) does not criminalize the possession of a certain type of weapon, but rather the possession of a weapon at a particular place.

In any event, as discussed above, the Legislature clearly expressed an intent to apply the culpability requirement stated as to one element to each other material element. N.J.S.A. 2C:2-2(c)(1). "[O]ur goal is to discern and implement the

18

intent of the Legislature." Smith, supra, 197 N.J. at 332. The State was therefore required to prove defendants were knowingly at an educational facility in order to obtain a conviction under N.J.S.A. 2C:39-5(e)(1). Accordingly, we find the jury instructions with respect to defendants' convictions under N.J.S.A. 2C:39-5(e)(1) warrant reversal, and we are constrained to vacate those convictions and remand for resentencing on the unlawful possession charges.

Having determined that remand for resentencing is necessary, we next address defendants' sentencing arguments.

III.

A.

Defendants, joined by the ACLU, contest the imposition of their mandatory minimum terms of imprisonment under N.J.S.A. 2C:39-5(i). That statute requires the sentencing court to impose a period of parole ineligibility "if the court finds" a substantial likelihood that the defendant is involved in organized criminal activity.

Defendants and amici rely principally on Alleyne, supra, which provides that "any fact that increases the mandatory minimum sentence is an 'element' that must be submitted to the jury" to be found beyond a reasonable doubt. ___ U.S. at ___, 133 S. Ct. at 2156, 186 L. Ed. 2d at 321 (overruling Harris v. United States, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524

19

(2002)). Applying Alleyne's holding to N.J.S.A. 2C:39-5(i), defendants contend that the imposition of mandatory minimum sentences based upon a judicial finding that they were involved in organized crime violated their Sixth Amendment rights.[1]

The State, joined by the Attorney General, concedes that Alleyne renders N.J.S.A. 2C:39-5(i) unconstitutional as written. Nevertheless, the State asks this Court to graft onto N.J.S.A. 2C:39-5(i) a requirement that a jury find that a defendant was involved in organized criminal activity before requiring the imposition of a mandatory minimum prison term.

B.

We agree with defendants that Alleyne renders the imposition of a mandatory minimum sentence under N.J.S.A. 2C:39-5(i) unconstitutional. Further, there is no dispute that Alleyne, which was decided during the pendency of defendants' appeal, applies to defendants' convictions. See State v. Wessells, 209 N.J. 395, 412 (2012) ("[I]t is now well-established that 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state

---

[1] To the extent that Cromwell also challenges application of aggravating factor five, N.J.S.A. 2C:44-1(a)(5) (substantial likelihood that defendant is involved in organized criminal activity), we note that a sentencing court may consider this factor when deciding what sentence to impose within the statutory range. Post at ___ (slip op. at 24) (citing State v. Natale, 184 N.J. 458, 472, 481-82 (2005)).

20

or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649, 661 (1987))). The question thus becomes whether it is within this Court's purview to amend the statute as the State requests.[2]

Given the clear statement of legislative intent in N.J.S.A. 2C:39-5(i), we decline the State's invitation to perform "judicial surgery." We acknowledge that, "[i]n appropriate cases, a court has the power to engage in judicial surgery or the narrow construction of a statute to free it from constitutional doubt or defect." State v. Fortin, 198 N.J. 619, 630 (2009) (quoting N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 75 (1980)) (internal quotation marks omitted). However, this procedure applies only "if we fairly can do so." Id. at 631.

In State v. Natale, 184 N.J. 458 (2005), we considered the constitutional validity of our sentencing statutes providing for the imposition of a sentence beyond the presumptive statutory

---

[2] Additionally, the State and amici raise numerous preemptory arguments with respect to the constitutional validity of the discretionary parole disqualifier under N.J.S.A. 2C:43-6(b) and certain applications of the Graves Act not applicable to this case. Because defendants were not sentenced under either of those provisions, we decline to address those arguments here. See State v. Nero, 195 N.J. 397, 412 n.5 (2008).

term based on a judicial finding of one or more aggravating factors. We held that our sentencing provisions allowing for the imposition of a sentence beyond that which is allowed by the jury verdict violated the Sixth Amendment, as expressed in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Natale, supra, 184 N.J. at 481-82. In striking the pertinent sentencing provisions, we preserved the judge's discretion to balance the aggravating and mitigating factors in considering the appropriate sentence within the applicable statutory range. Id. at 488.

Here, N.J.S.A. 2C:39-5(i) unambiguously requires the imposition of a mandatory minimum sentence based on a judicial finding of fact. Requiring a jury rather than a judge to make such a finding would not merely be severing a constitutionally infirm portion of the sentencing statute, it would be rewriting its essential requirements. There is no ambiguity in the statute from which we can "assum[e] that the Legislature intended to act in a constitutional manner." Right to Choose v. Byrne, 91 N.J. 287, 311 (1982). It is unclear "'whether the Legislature would want the statute to survive with appropriate modifications rather than succumb to constitutional infirmities.'" State v. Emmons, 397 N.J. Super. 112, 122 (App. Div. 2007) (quoting Byrne, supra, 91 N.J. at 311), certif.

22

denied, 195 N.J. 421 (2008). Thus, that determination is for the Legislature.

Because judicial rehabilitation is not an option, we are compelled to vacate defendants' sentences and remand for resentencing for the unlawful possession convictions, without consideration of the mandatory minimum sentence under N.J.S.A. 2C:39-5(i) and without the empaneling of a sentencing jury, as the State requests.

IV.

In addition to the Alleyne issue discussed above, Grate disputes the trial court's assessment of the aggravating and mitigating factors in his conviction for unlawful possession of a handgun. Specifically, Grate contends there was insufficient evidence to support the court's finding of aggravating factors three, the risk that he will reoffend, N.J.S.A. 2C:44-1(a)(3); five, the substantial likelihood that he is involved in organized criminal activity, N.J.S.A. 2C:44-1(a)(5); and nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9).

It is well-established that appellate courts review the trial court's "sentencing determination under a deferential standard of review." State v. Lawless, 214 N.J. 594, 606 (2013) (citing State v. Cassady, 198 N.J. 165, 180 (2009); State v. O'Donnell, 117 N.J. 210, 215 (1989)). We are "bound to affirm a sentence, even if [we] would have arrived at a different result,

23

as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." Ibid. (internal quotation marks and citations omitted).

Here, there was ample evidence supporting the trial court's findings. Grate's presentence report shows that he had been charged with numerous indictable offenses on eight prior occasions. Those charges resulted in two downgraded convictions, the first for violent behavior and the second for simple assault. In connection with the current offense, the court's finding that defendant was at a high risk to recidivate was sound. Further, as the court noted, "handguns on a college campus . . . is a dangerous situation, and absolutely cannot be tolerated." Accordingly, we find no basis to overturn the court's findings with respect to aggravating factors three and nine.

We reiterate that a judicial finding of aggravating factor five cannot be the basis of a mandatory minimum sentence. The sentencing court may nevertheless consider this factor when deciding what sentence to impose within the statutory range. See Natale, supra, 184 N.J. at 472, 481-82 ("A judge is authorized to impose a sentence within the range allowed by the jury verdict[.]"). There was more than enough evidence supporting the judge's finding with respect to aggravating

24

factor five. Corporal Santana testified that Grate admitted to being a member of the "5 Deuce Hoova Crip" street gang, and that he had "body brandings" and a tattoo that identified him as a member of that street gang. Based on this testimony, it was not an abuse of discretion to find defendant was substantially likely to have been involved in organized crime.

Grate also argues the sentencing court abused its discretion in failing to consider evidence in support of mitigating factors one, that he did not cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(1), and two, that he did not contemplate that his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(2). The sentencing court is required to consider evidence of a mitigating factor and must apply mitigating factors that "are amply based in the record." State v. Dalziel, 182 N.J. 494, 504-05 (2005); see also State v. Hess, 207 N.J. 123, 155 n.8 (2011) (noting same). Grate, however, presents no evidence in support of his claim. In light of the nature of the offense, we see no abuse of discretion in failing to consider these mitigating factors.

Accordingly, with the exception of the mandatory minimum sentence imposed pursuant to N.J.S.A. 2C:39-5(i), we affirm Grate's sentence.

V.

25

For the foregoing reasons, the judgment of the Appellate Division affirming defendants' convictions for unlawful possession of a weapon at an educational facility is reversed. We remand for a new trial on the charge of unlawful possession of a weapon at an educational facility, and for resentencing consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.

26

SUPREME COURT OF NEW JERSEY

NO.   A-47/48                SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

               v.

JAMES GRATE,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

               v.

FUQUAN CROMWELL, (a/k/a
FUGUAN CROMWELL, FUQUAN A.
CROMWELL, SAMAAD CROMWELL,
SAMAD CROMWELL, SAMAAD
LATHER, SAMADD N. J.L.,
SAMAAD N. LATHER),

      Defendant-Appellant.

DECIDED           January 15, 2015

             Chief Justice Rabner           PRESIDING

OPINION BY             Justice Solomon

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM IN PART/ REVERSE IN PART/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |