# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0032-23

IN THE MATTER OF
D.J.K.

_____

Submitted November 19, 2024 – Decided April 14, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Petition No. 1019 XTR-2023-000001.

The Tormey Law Firm, LLC, attorneys for appellant D.J.K. (Travis J. Tormey, of counsel; Jeffrey A. Skiendziul, on the brief).

Renée M. Robeson, Hunterdon County Prosecutor, attorney for respondent State of New Jersey (Christina L. Ludwig, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant D.J.K. appeals from the July 26, 2023 final extreme risk protective order (FERPO) entered against him pursuant to the Extreme Risk Protective Order Act of 2018 (the Act), N.J.S.A. 2C:58-20 to -32, the compelled

sale of his firearm, and the revocation of his firearm purchaser identification card (FPIC) and handgun purchase permit (HPP).[1] The trial court found that the State had proved by a preponderance of the evidence that appellant posed a significant danger of bodily injury to himself or the public by owning, purchasing, or receiving firearms or ammunition. Having considered the record and the applicable law, we affirm.

I.

We summarize the facts from the record developed during the July 21, 2023 plenary hearing, at which Lebanon Township Police Department (LTPD) Detective Timonthy Savage was the only witness to testify. Savage explained that he was responsible for conducting background investigations for a permit to carry a handgun application. He stated that a background investigation consisted of checking for outstanding traffic warrants and violations, outstanding criminal warrants and violations, driver's license and driver's

---

[1] Pursuant to Admin. Off. of the Cts., Admin. Directive #19-19, Guidelines for Extreme Risk Protective Orders, Guideline 8(a) (Aug. 12, 2019) (AOC Directive), records relating to FERPO proceedings are confidential and shall not be disclosed to persons other than the respondent except for good cause shown. We also refer to certain individuals whose statements and testimony are included in the record by their initials to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

abstracts, fingerprint records, juvenile records, local records, and mental health records. D.J.K. did not testify or submit any evidence at the hearing.

Savage testified he generated a report based on the background investigation conducted on appellant. In May 2011, appellant obtained a FPIC and HPP, which he used to purchase a Glock 21. Savage testified regarding two incidents at appellant's home that were documented in police reports. In October 2021, appellant's daughter reported to a school counselor that she had been "grabbed" by appellant and "pushed" to the ground. LTPD officers went to the home and conducted a welfare check. Savage testified that appellant stated he had an argument over "some misbehavior" with his daughter and he had "some kind of contact" with her. The daughter was not in the home at the time of the welfare check. When officers contacted her, she complained of "redness on her wrist and shoulder" and reported that she was pushed to the ground by appellant during an argument.

The second incident occurred in February 2022, when LTPD officers responded to a 9-1-1 hang up call at appellant's home. Officers spoke with the spouse, who did not witness the incident between appellant and his son. Officers also spoke with the eleven-year-old child, who was visibly upset, crying, and reported he did not stop using a video device "fast enough," causing appellant

3

to become "mad." Appellant grabbed and threw the video device away from the child. Appellant then grabbed and pushed his son and attempted to hit him but missed. When officers spoke with appellant, he was "verbally hostile" and "belligerent" and "yelled" and used profanity. Appellant ended the conversation and then slammed the door. The matter was referred to the Division of Child Protection and Permanency (DCPP) and no criminal charges were filed.

In September 2022, appellant applied for a permit to carry a handgun. Appellant answered "no" to question twenty-five of his application, which asked if he had ever been treated at a mental institution or hospital on an inpatient or outpatient basis. Savage testified that a mental health records check was submitted to the County Adjuster's Office, which returned a positive record and required follow up from appellant. The mental health record check showed appellant was involuntarily committed as a teenager at the Carrier Clinic from September 23, 1987, to November 10, 1987.[2] However, on follow up, it was corrected to a voluntary commitment. In response to Savage's request for a doctor's note addressing appellant's ability to safely handle firearms, appellant

---

[2] Carrier Clinic is a behavioral health facility specializing in inpatient psychiatric treatment and rehabilitation for substance abuse. About Carrier Clinic, Hackensack Meridian Health Carrier Clinic.

A-0032-23

provided a letter from a physician stating that he "did not present evidence of mental illness and he [was] capable of possessing and handling a firearm safely."

In January 2023, a hearing was held on appellant's application. Based on appellant's testimony and the answer to question twenty-five, the court determined he knowingly made a false statement because he did not disclose his inpatient treatment at Carrier.

In March 2023, the son threatened a female juvenile at school, stating that he would "blow her brains out." Under the protocol, the son was to be removed from the home pending a psychological evaluation and appellant was requested to voluntarily surrender his firearms to remove the immediate threat pending resolution of the threat from the child. When appellant was asked to voluntarily surrender the known firearms in the home; he was evasive and denied owning firearms, and then stated he moved the firearm out of state.

A temporary extreme risk protective order (TERPO) was requested and granted by a municipal court. The TERPO included a warrant to search for any weapons. When officers found and seized a Glock 21 at appellant's home, he resisted the officers' effort to take the gun.

Thereafter, the State moved to revoke appellant's FPIC and HPP, and for a FERPO. On July 21, 2023, a plenary hearing was held in the Law Division on

whether the revocation of the FPIC and HPP and the issuance of a FERPO was warranted. The court discredited appellant's affidavit and evasive claims and gave his statements no weight. It gave minimal weight to his civil commitment as a teenager.

The court considered the statutory factors and found the following factors relevant and "substantially affect[ed] [appellant's] fitness to possess a firearm and the storage of the firearm:" (1) his "continued dishonesty"; (2) his "lack of respect for the safety of the community when faced with an issue of threatened gun violence by his son"; (3) the police report and Savage's testimony regarding the October 2021 incident with his daughter was sufficient to establish the first factor; (4) the police report and Savage's testimony concerning the February 2022 incident with his son was sufficient to establish the second factor; (5) the March 2023 threat incident involving his son; and (6) the court was not convinced that appellant "would put adequate protections in place to protect the public." Based on these factors, the court found the State proved by a preponderance of the evidence that appellant posed a significant danger of bodily injury to himself by owning, purchasing, or receiving firearms and ammunition. This appeal followed.

## II.

On appeal, appellant raises the following issues for our consideration:

> POINT 1: The Trial Court Committed Reversible Error by Finding that Appellant Should be Subject to a Final Extreme Risk Protective Order (FERPO).
>
> POINT 2: The Trial Court Violated Appellant's Second Amendment Right to Keep and Bear Arms by Subjecting him to a Final Extreme Risk Protective Order Without Explaining how the Statute is Consistent with the Nation's History and Traditions as it Relates to Second Amendment Regulations.
>
> POINT 3: The Trial Court Erred by Granting the State's Application Which Revoked Appellant's Firearms Permits and Compelled the Sale of his Firearms.

Our review of a trial court's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005) (quoting Cesare, 154 N.J. at 412). Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Cesare, 154 N.J. at 412. We therefore will "not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with

A-0032-23

the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid.

The interpretation of a statute, however, is a legal question. State v. Revie, 220 N.J. 126, 132 (2014). Thus, we review disputes of statutory interpretation de novo, "unconstrained by deference to the decisions of the trial court . . . ." State v. Grate, 220 N.J. 317, 329 (2015).

The Act, New Jersey's "'red flag law,' empowers a court," upon proof by a preponderance of the evidence, to order the removal of "firearms from a person who 'poses a significant danger of bodily injury to . . . self or others' by possessing them." In re D.L.B., 468 N.J. Super. 397, 400 (App. Div. 2021) (omission in original) (quoting N.J.S.A. 2C:58-24(b)). The court employs a two-step process to remove firearms. First, the court decides if "it will issue a temporary order to remove firearms" and second, "after a plenary hearing, the court will consider issuing a final order to remove the firearms indefinitely." Id. at 401-02 (citing N.J.S.A. 2C:58-23 and N.J.S.A. 2C:58-24).

In considering a TERPO or FERPO application, a court is required to consider eight factors, in determining whether the respondent:

> (1) has any history of threats or acts of violence by the respondent directed toward self or others;

(2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the 'Prevention of Domestic Violence Act of 1991,' . . . ;

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the 'Victim's Assistance and Survivor Protection Act' . . . ;

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to [N.J.S.A. 2C:12-10], or domestic violence offense enumerated in [N.J.S.A. 2C:25-19];

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

[N.J.S.A. 2C:58-23(f).]

Guideline 3(d) requires a court to consider three additional factors, based on the Act's statement that the eight factors comprise a non-exclusive list, N.J.S.A. 2C:58-23(f), and the requirement that courts consider "any other

relevant evidence" in deciding if it will issue a FERPO, N.J.S.A. 2C:58-24. See AOC Directive, Guideline 3(d), at 6-7 (discussing additional factors incorporated in AOC Guidelines). The Guideline also requires the court to consider seven additional factors, nine through fifteen. Three of those factors pertain to whether the respondent:

> (9) has recklessly used, displayed, or brandished a firearm;
>
> (10) has an existing or previous extreme risk protective order issued against him or her; and
>
> (11) has previously violated an extreme risk protective order issued against him or her.
>
> [Id.]

Only if a court finds at least one of the eleven "behavioral" factors, then it "may consider," four additional factors pertaining to a person's mental health, as to whether a respondent:

> (12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;
>
> (13) has received or is receiving mental health treatment;
>
> (14) has complied or has failed to comply with any mental health treatment; and

> (15) has received a diagnosis of a mental health disorder.
>
> [Id.]

No single factor is determinative; rather, in weighing each of the factors, the FERPO is issued where the State has satisfied its burden. See D.L.B., 468 N.J. Super. at 406-07 (quoting N.J.S.A. 2C:58-24(b)). "The FERPO bars the respondent from possessing, and requires the respondent to surrender, any firearms, ammunition, [FPIC], [HPP], and handgun carry permit." Id. at 407 (citing AOC Guideline 6(b)); see also N.J.S.A. 2C:58-24(d).

We reject appellant's contention that the court committed reversible error in issuing the FERPO. As to factor one, we are unpersuaded by appellant's argument that his "interaction" with his daughter did not yield any abuse or neglect findings by DCPP or was subject to criminal charges and the court improperly applied to the factor that he made "threats" of violence toward himself or others. Appellant misreads factor one because the record supports the finding that he committed an "act" of violence against his daughter, which resulted in an injury.

Concerning factor two, appellant's argument that there was no documented use or threats of use of physical force by him is not supported by the record. After considering Savage's testimony and the police report

concerning the February 2022 incident involving appellant and his son, the court found appellant had used and threatened physical force against his son by grabbing the video device and attempting to strike the child. That finding is supported by the evidence at the hearing.

Appellant also misreads the application of factors nine, ten, and eleven to this matter. Here, the court did not consider those three factors but gave weight to other relevant factors; namely, his son's immediate threat that he would blow a female juvenile's brains out. The court also appropriately considered appellant's refusal to voluntarily surrender the firearm, the evasive response when questioned regarding the firearm's location, and the denial of owning the firearm. Based on appellant's responses, the court expressed concern that he would provide adequate protections to secure the firearm from his son and protect the public from harm.

Lastly, as to the four additional factors under Guideline 5(d), the court gave minimal weight to appellant's commitment in the clinic given the passage of time. Additionally, the State had not produced any evidence that appellant had received any other mental health treatment or hospitalizations in the last thirty years.

A-0032-23

Having reviewed the record, we are convinced the court's findings of fact and credibility determinations are amply supported by the record. The court's application of the factors and guidelines and the allocation of weight was likewise supported by the evidence. We conclude the court carefully evaluated and analyzed the evidence and ruled the State had established by a preponderance of the evidence that issuance of a FERPO was warranted. We discern no error in the court's decision.

As noted above, the FERPO bars the respondent from possessing, and requires the respondent to surrender, any firearms, ammunition, [FPIC], [HPP], and handgun carry permit. D.L.B., 468 N.J. Super. at 407 (citing Guideline 6(b)); see also N.J.S.A. 2C:58-24(d). Therefore, the court's issuance of the FERPO provided for the immediate revocation of a FPIC and HPP because appellant is no longer qualified. See N.J.S.A. 2C:58-3(f). For those reasons, we conclude the court did not abuse its discretion or misapply the law in revoking appellant's FPIC and HPP.

Finally, we decline to consider appellant's constitutional challenge under New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). This issue was not properly raised before the court, and we decline to consider it for the

first time on appeal.  <u>Selective Ins. Co. of Am. v. Rothman</u>, 208 N.J. 580, 586 (2012); <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973).

  Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division