JUSTICE ALBIN delivered the opinion of the Court.
**424 *566 We must decide whether a court, in sentencing a defendant within the range authorized by a jury's verdict, may impose a mandatory-minimum period of parole ineligibility under N.J.S.A. 2C:43-6(b), without offending the United States Constitution.
In a series of cases beginning with Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that, other than the finding of a prior conviction, judicial factfinding that extends the sentence beyond the range authorized by either a jury verdict or a defendant's admissions at a plea hearing violates the Sixth Amendment right to trial by jury. Thus, when a jury's verdict authorizes a sentence only within the second-degree range, the Constitution prohibits a judge from imposing a sentence within the first-degree range based solely on judicial factfindings. See id. at 490, 120 S.Ct. 2348.
In Alleyne v. United States, 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the Supreme Court extended the Apprendi principle to mandatory-minimum sentences. It determined that judicial factfinding that increases the mandatory-minimum sentencing range beyond the range authorized by a jury verdict or a defendant's admissions at a plea hearing also offends the Sixth Amendment. Ibid.
A jury convicted defendant Nicholas Kiriakakis of two offenses, only one of which is relevant to this appeal -- second-degree conspiracy to distribute cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:5-2. Based on that jury verdict, the court sentenced defendant to an eight-year prison term with a four-year period of parole ineligibility. For a second-degree crime, the court may impose a prison term within a range of five to ten years, N.J.S.A. 2C:43-6(a)(2), and a minimum period of parole ineligibility not to exceed one-half of the term set, provided "the court is clearly **425 convinced that the aggravating factors substantially outweigh the mitigating factors," N.J.S.A. 2C:43-6(b).
In exercising its discretion to impose a four-year period of parole ineligibility under N.J.S.A. 2C:43-6(b), the sentencing court found that the three applicable aggravating factors substantially outweighed the two mitigating factors. The court rejected defendant's argument that imposing a discretionary mandatory-minimum sentence violated the dictates of Alleyne. The Appellate Division agreed.
We now hold that the four-year period of parole ineligibility imposed by the court in exercising its sentencing discretion pursuant to N.J.S.A. 2C:43-6(b) fell within the range authorized by the jury's verdict and therefore did not violate Alleyne or the Sixth Amendment. In issuing a mandatory-minimum term, the court merely identified and weighed traditional sentencing factors to set an appropriate sentence within the statutory range set by the Legislature. Alleyne permits judges, in the exercise of their discretion, to take into consideration various factors relating both to the offense and offender "in imposing a judgment within the range prescribed by statute." 570 U.S. at 116, 133 S.Ct. 2151 (quoting Apprendi, 530 U.S. at 481, 120 S.Ct. 2348 ). The aggravating factors found by the court here were not the functional equivalent of the elements of an offense. This case does not involve a judicial finding of an aggravating factor that required the imposition of a mandatory-minimum sentence, a scenario that would violate the right to a jury trial. See State v. Grate, 220 N.J. 317, 334-35, 106 A.3d 466 (2015).
We therefore reject defendant's constitutional challenge to N.J.S.A. 2C:43-6(b) and affirm his sentence.
*567 I.
A.
A jury found Nicholas Kiriakakis guilty of second-degree conspiracy to distribute cocaine, N.J.S.A. 2C:35-5(a)(1) and **426 N.J.S.A. 2C:5-2, and third-degree hindering his own apprehension by giving false statements to the police, N.J.S.A. 2C:29-3(b)(4). The jury acquitted defendant of two counts of murder and two weapons possession offenses. We recount the facts relevant to this appeal.[1]
On the morning of February 18, 2010, a passerby on a street in Teaneck observed the bodies of Michael Mirasola and Jonathan Beneduce in a parked Ford Explorer. Both had been shot dead. The State's theory at trial was that defendant, along with Mirasola and Beneduce, engaged in a scheme to purchase counterfeit money and then use that money to buy three kilos of cocaine. The State presented evidence that defendant was the "lead organizer of this illicit scheme." The State posited that, on the evening of the planned drug deal, defendant was criminally responsible for the murders of Mirasola and Beneduce. The State also presented evidence that defendant had a financial motive to kill his business associates. The defense conceded at trial that defendant, Mirasola, and Beneduce were engaged in an "illegal business" but denied that defendant was involved in their deaths. As earlier noted, the jury only convicted defendant of the conspiracy-to-distribute cocaine and hindering apprehension charges.
The judge who presided at defendant's jury trial sentenced defendant to an eight-year prison term with a four-year period of parole ineligibility on the conspiracy charge and to a consecutive five-year term with a two-and-a-half-year period of parole ineligibility on the hindering charge. The judge imposed a fine of $150,000 and other requisite financial penalties and assessments. In setting that sentence, the judge found four aggravating factors: the nature and circumstances of the offense, N.J.S.A. 2C:44-1(a)(1) ; the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3) ; the substantial likelihood that defendant was involved in organized criminal activity, N.J.S.A. 2C:44-1(a)(5) ;
**427 and the need for deterrence, N.J.S.A. 2C:44-1(a)(9). The judge also found one mitigating factor, defendant's lack of a prior history of delinquency or criminal activity, N.J.S.A. 2C:44-1(b)(7).
An Appellate Division panel rejected defendant's claimed trial errors, upheld his convictions, and dismissed as meritless his challenge to the consecutive sentences. The panel, however, vacated defendant's sentence. The panel determined that "[e]ven accepting the [trial judge]'s characterization of defendant as the leader of the conspiracy," the record did not support the finding of aggravating factor one -- that defendant committed the drug conspiracy and hindering offenses "in an especially heinous, cruel, or depraved manner," quoting N.J.S.A. 2C:44-1(a)(1) (alteration omitted). The panel noted that "[t]he jury rejected the State's contention that defendant lured his coconspirators with the promise of wealth, then murdered them to steal their money." The panel also observed that "the victims were willing and active participants in this illicit [drug] scheme." The panel therefore remanded for a new sentencing hearing without consideration of aggravating factor one.
Judge Susan Steele presided at defendant's resentencing. Judge Steele reaffirmed *568 the remaining aggravating factors found by the initial sentencing judge. Judge Steele found aggravating factor three -- the risk that defendant would reoffend -- because defendant failed to take full responsibility for his conduct; aggravating factor five -- the substantial likelihood defendant was involved in organized criminal activity -- because the evidence demonstrated his "oversight of the elaborate scheme of the criminal conspiracy"; and aggravating factor nine -- the need for deterrence -- because he "conspired to carry out a sophisticated drug deal involving a large quantity of cocaine" that put the public at potential risk. Judge Steele also found mitigating factor seven, defendant's lack of a prior juvenile or criminal record, N.J.S.A. 2C:44-1(b)(7), and mitigating factor eight, "[t]he defendant's conduct was the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8), to which she assigned "minimal weight." Judge Steele concluded that **428 based on a weighing and balancing of those factors, the "aggravating factors substantially preponderate over the mitigating factors."[2]
Judge Steele sentenced defendant to an eight-year prison term with a four-year parole disqualifier on the drug conspiracy charge and a consecutive flat four-year term on the hindering charge. The fines, assessments, and penalties set at the earlier sentencing hearing were imposed again.
Judge Steele also addressed defendant's constitutional argument that Alleyne, 570 U.S. 99, 133 S.Ct. 2151, decided six weeks after defendant's initial sentencing, barred the imposition of a mandatory-minimum sentence based on judicial factfinding pursuant to N.J.S.A. 2C:43-6(b). Judge Steele dismissed that argument, holding that "[t]here can be no dispute that by providing for a parole disqualifier within each range of sentencing the Legislature has abided by the mandate of the Alleyne court."
The Appellate Division affirmed defendant's sentence. The panel rejected defendant's constitutional challenge to N.J.S.A. 2C:43-6(b) based on Alleyne. The panel determined that Alleyne did not bar the use of traditional aggravating and mitigating factors to impose a discretionary period of parole ineligibility under N.J.S.A. 2C:43-6(b). As support for that position, the panel cited to State v. Abdullah, 184 N.J. 497, 508-09, 878 A.2d 746 (2005), in which this Court upheld a defendant's mandatory-minimum parole ineligibility term that was within the sentencing range authorized by the jury verdict.
We granted defendant's petition for certification "limited to the issue of the sentencing court's imposition of a mandatory minimum term." 232 N.J. 374, 374-75, 180 A.3d 701 (2018). We also granted the motions of the Attorney General of New Jersey, the American **429 Civil Liberties Union of New Jersey (ACLU), and the Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as amici curiae.
II.
A.
Defendant asks this Court to declare that a period of parole disqualification imposed pursuant to N.J.S.A. 2C:43-6(b), based solely on judicial factfinding, contravenes the Sixth Amendment's right to trial by jury as construed by Alleyne and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Defendant *569 argues that the jury's verdict alone did not authorize the imposition of a parole disqualifier and that the judicial finding of aggravating factors -- the functional equivalent of elements of an offense -- to justify his four-year parole disqualifier violated his constitutional rights. Relying on Alleyne, 570 U.S. at 113, 133 S.Ct. 2151, he asserts that any judicially found fact that increases either the ceiling or the floor of the sentencing range authorized by the jury verdict is a constitutionally impermissible punishment. In defendant's view, a sentencing court contravenes the Sixth Amendment whenever it finds a fact -- even if that factfinding is discretionary -- that leads to a sentence beyond the authorized range, citing Blakely, 542 U.S. at 305 n.8, 124 S.Ct. 2531.
Amici ACLU and ACDL advance many of the same arguments made by defendant. More specifically, the ACLU posits that, based on the jury verdict alone, the maximum sentence that a court could have imposed for a second-degree conspiracy conviction was ten years -- with no period of parole ineligibility. The judicial finding of a single aggravating factor, the ACLU contends, authorizing a mandatory-minimum sentence under N.J.S.A. 2C:43-6(b) violates Alleyne and the Sixth Amendment. The ACLU submits that the discretionary imposition of a parole disqualifier in this case is indistinguishable from the automatically imposed parole disqualifier based on judicial factfinding that we found **430 unconstitutional in Grate, 220 N.J. at 334-35, 106 A.3d 466. Last, the ACLU urges this Court to strike down N.J.S.A. 2C:43-6(b), rather than save the statute through judicial surgery, leaving to the political branches the appropriate remedy.
B.
The State counters that N.J.S.A. 2C:43-6(b) sets the parole-disqualifier range authorized by a jury's verdict and therefore empowers a court to fix a sentence within that range using traditional sentencing factors without offending the Sixth Amendment. For a second-degree conviction, the State submits, the statutory range is five to ten years with a parole disqualifier up to one-half of the sentence imposed -- a potential range of zero to five years. The State contends that the statutory aggravating factors enumerated in the sentencing provisions of New Jersey's Code of Criminal Justice are not elements of a crime for Sixth Amendment purposes. The State maintains that the power of judges to exercise their discretion in imposing a period of parole ineligibility within the range prescribed by N.J.S.A. 2C:43-6(b) passes constitutional muster under Alleyne because the finding of an aggravating factor -- or factors -- does not mandate a minimum sentence. The State reasons that the statute at issue in Grate required the imposition of a mandatory-minimum sentence based on a judicial finding of fact, thus violating Alleyne, whereas here the judicial finding of aggravating factors did not mandate a period of parole ineligibility.
The Attorney General, as amicus curiae, echoes and expands on the arguments advanced by the State. The Attorney General also expresses the view that the Alleyne Court merely held that the judicial finding of a "specific fact" that requires the imposition of a mandatory-minimum term is the equivalent of an element of a crime and must be submitted to a jury. According to the Attorney General, Alleyne made clear that the Sixth Amendment does not bar a judge from exercising "broad sentencing discretion, informed **431 by judicial factfinding" within the range prescribed by a jury's verdict, quoting Alleyne, 570 U.S. at 116, 133 S.Ct. 2151.
III.
A.
In this appeal, we address a recurring issue -- what factfindings fall within the *570 exclusive province of the jury and what judicial factfindings are permissible during sentencing. In resolving that issue, we must determine whether certain facts in this case constitute either elements of an offense or information traditionally relied on by judges when sentencing. The issue comes into sharper focus given the State's and defendant's dueling views on whether the sentencing judge's imposition of a four-year parole disqualifier is within the permissible range authorized by the jury's verdict. We begin our analysis with some fundamental principles concerning the respective roles of the jury and the judge in our system of criminal justice.
The United States Constitution guarantees the accused the right to trial by jury and places the burden on the State to prove every element of the offense beyond a reasonable doubt. United States v. Booker, 543 U.S. 220, 230, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (citing United States v. Gaudin, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ; see also U.S. Const. amends. V, VI, XIV. A jury -- not a judge -- must determine whether the State has satisfied the elements necessary to convict a defendant of a crime. Booker, 543 U.S. at 245, 125 S.Ct. 738. In determining what constitutes an element of an offense, "the relevant inquiry is one not of form, but of effect -- does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Apprendi, 530 U.S. at 494, 120 S.Ct. 2348.
It is the jury's verdict that limits the range of the sentence that may be imposed by a judge.
**432 Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531. Within the sentencing range authorized by the jury's verdict, a judge has broad discretion to impose an appropriate sentence by considering traditional factors related to the offense and offender. See Apprendi, 530 U.S. at 481, 120 S.Ct. 2348. Within that authorized range, the judge may engage in factfindings, supported by credible evidence, in setting a fair sentence. See State v. Natale, 184 N.J. 458, 487, 878 A.2d 724 (2005).
In Apprendi and cases that followed, the United States Supreme Court made clear that judicial factfindings that infringe on the jury's exclusive role in determining guilt and the range of punishment flowing from a guilty verdict violate the Sixth Amendment. See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (refining Apprendi by stating that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"); Booker, 543 U.S. at 244, 125 S.Ct. 738 (same). In Natale, we distilled the following principles from federal jurisprudence: The Sixth Amendment does not prohibit a judge from sentencing a defendant within a range consistent with (1) the jury's verdict, (2) the defendant's admissions at a guilty plea hearing, (3) his stipulation to judicial factfindings, and (4) his prior convictions. 184 N.J. at 481, 878 A.2d 724. A judge, however, does not have constitutional authority to impose a sentence beyond those limited parameters. Id. at 482, 878 A.2d 724.
State and federal sentencing schemes contravening those basic principles have not survived constitutional scrutiny. In Apprendi, the United States Supreme Court invalidated New Jersey's statutory scheme for punishing hate crimes.
*571 530 U.S. at 491-92, 120 S.Ct. 2348. There, the defendant's guilty plea to second-degree possession of a firearm for an unlawful purpose exposed him to a **433 term of only five to ten years in prison. New Jersey's sentencing law, however, allowed the judge to find by a preponderance of the evidence that the defendant's racial motivation in committing the crime authorized a sentence within the first-degree range of ten to twenty years. Id. at 470, 491-92, 120 S.Ct. 2348. The Court declared unconstitutional the defendant's twelve-year prison term because, based solely on the judge's factfinding, the defendant's sentence exceeded the "statutory maximum" for the crime to which he pled guilty. Id. at 490-91, 120 S.Ct. 2348.
Applying the Apprendi rationale, the Supreme Court struck down Arizona's capital sentencing scheme that allowed a defendant convicted by a jury of murder to be sentenced to death based solely on a judge's finding of certain enumerated aggravating factors, which were "the functional equivalent of an element of a greater offense." Ring v. Arizona, 536 U.S. 584, 588, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (quoting Apprendi, 530 U.S. at 494 n.19, 120 S.Ct. 2348 ). Under Arizona law, based on the jury's verdict alone, the maximum allowable sentence was life imprisonment. Id. at 592, 122 S.Ct. 2428. The judicially imposed death sentence violated the defendant's Sixth Amendment right to trial by jury. Id. at 609, 122 S.Ct. 2428.
In Blakely v. Washington, the Supreme Court declared that Washington State's sentencing scheme, which permitted judges to impose "exceptional" sentences, was contrary to Apprendi and thus unconstitutional. Blakely, 542 U.S. at 304-05, 124 S.Ct. 2531. Based on Blakely's admission to kidnapping at his plea hearing, the trial judge was required by Washington law to impose a "standard range" prison sentence not to exceed fifty-three months, despite the general statutory range not to exceed ten years. Id. at 298-99, 124 S.Ct. 2531. The sentencing judge, however, found that Blakely acted with "deliberate cruelty" and imposed an "exceptional" sentence of ninety-months. Id. at 303-04, 124 S.Ct. 2531. That judicial factfinding, extending Blakely's sentencing range beyond the range authorized by his guilty plea, violated the Sixth Amendment. Id. at 304-05, 124 S.Ct. 2531.
**434 The inherent logic of the Apprendi line of cases led the United States Supreme Court to strike down the Federal Sentencing Guidelines (Guidelines), because the Guidelines empowered judges, based on their own factfindings, to impose sentences exceeding the range authorized by the jury's verdict or the defendant's admissions at his plea hearing. Booker, 543 U.S. at 226-27, 125 S.Ct. 738.
In Booker, a jury convicted the defendant of possession with intent to distribute at least fifty grams of cocaine base, a crime punishable by a sentence of ten years to life imprisonment under 21 U.S.C. § 841(a)(1). 543 U.S. at 227, 125 S.Ct. 738. The jury found that the defendant possessed 92.5 grams of cocaine. Ibid. Based on that evidence, as well as Booker's criminal history, the Guidelines mandated that the trial judge select a "base" sentence between seventeen years and six months and twenty-one years and ten months. Ibid. In a separate proceeding, however, the sentencing judge applied the preponderance-of-the-evidence standard to conclude that Booker "possessed an additional 566 grams of crack and that he was guilty of obstructing justice." Ibid. Based on those judicial factfindings, the Guidelines compelled the imposition of a sentence between thirty years and life imprisonment. Ibid. Booker received a thirty-year term -- a sentence more than eight years longer *572 than the maximum sentence authorized by the jury verdict. Ibid.
The Court declared the Guidelines, as written, and Booker's sentence unconstitutional because "the judge, not the jury, ... determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance" of the evidence. Id. at 236, 125 S.Ct. 738. The Court then refashioned the Guidelines to conform to the dictates of the Sixth Amendment. Id. at 245-48, 125 S.Ct. 738. The Court did so by rendering the Guidelines "advisory" in nature. Id. at 246, 125 S.Ct. 738. Thus, the maximum permissible sentence under a criminal statute became the ceiling of the statutory range. See id. at 245, 125 S.Ct. 738. Although they are not bound by the **435 Guidelines in exercising their discretion, district courts are instructed to take the Guidelines into account when imposing sentence. Id. at 264, 125 S.Ct. 738. By eliminating the binding nature of the Guidelines on judges, the new regime is an indeterminate sentencing scheme within the statutory range. Id. at 245, 125 S.Ct. 738. The Court crafted a standard of appellate review that looks to the "reasonableness" of a sentence. Id. at 261, 125 S.Ct. 738. The Court expressed confidence that a "reasonableness" standard for appellate review provided the best means for achieving sentencing uniformity. Id. at 262-63, 125 S.Ct. 738.
Importantly, in Apprendi, Blakely, and Booker, the Supreme Court emphatically noted that judges retained their authority to rely on traditional sentencing factors concerning the offense and the offender in exercising their discretion in imposing a sentence within the prescribed sentencing range. Booker, 543 U.S. at 251, 125 S.Ct. 738 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.") (alteration omitted) (quoting 18 U.S.C. § 3661 ); Blakely, 542 U.S. at 309, 124 S.Ct. 2531 ("In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail."); Apprendi, 530 U.S. at 481, 120 S.Ct. 2348 (stating that it is not "impermissible for judges to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment within the range prescribed by statute.").
Apprendi, Blakely, and Booker compelled this Court to invalidate presumptive sentencing under the New Jersey Code of Criminal Justice. Natale, 184 N.J. at 484, 878 A.2d 724. Under the Code, a defendant could not "be sentenced to a period of imprisonment greater than the presumptive term for the crime he committed" in the absence of a judicial finding of at least one statutory aggravating factor. Id. at 466, 878 A.2d 724 (citing N.J.S.A. 2C:44-1(f)(1) ). For example, the sentencing range for a second-degree **436 crime is a prison term between five and ten years, N.J.S.A. 2C:43-6(a)(2), and the then-statutory presumptive term was seven years, N.J.S.A. 2C:44-1(f)(1)(c). Id. at 483, 878 A.2d 724. Under the Code, a judge was required to impose "the presumptive term 'unless the preponderance of aggravating or mitigating factors, as set forth in [ N.J.S.A. 2C:44-1 ] a and b., weigh[ed] in favor of a higher or lower term' within the statutory range." Id. at 484, 878 A.2d 724 (quoting N.J.S.A. 2C:44-1(f)(1) ). Because the Code allowed judges to impose sentences beyond the presumptive term -- the "statutory maximum" for Apprendi purposes -- based on their finding of aggravating factors, the Code was no longer compatible with Apprendi, Blakely, and Booker. Ibid. To remedy that *573 constitutional infirmity and conform the Code to the Sixth Amendment, we eliminated presumptive terms. Id. at 487, 878 A.2d 724. "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, e.g., ten years for a second-degree offense, N.J.S.A. 2C:43-6(a)(2)." Ibid.
With the removal of presumptive-term sentencing, we made clear in Natale that "[j]udges will continue to determine whether credible evidence supports the finding of aggravating and mitigating factors and whether the aggravating or mitigating factors preponderate." Ibid. We understood that in a rational system of justice, determining a sentence in a continuum between five and ten years for a second-degree offense requires a judge to "identify the aggravating and mitigating factors and balance them to arrive at a fair sentence." Id. at 488, 878 A.2d 724. Indeed, "reason suggests that ... when the aggravating factors preponderate, sentences will tend toward the higher end of the range." Ibid.
We reject any suggestion that the judicial finding of aggravating factors within the prescribed sentencing range authorized by a jury's verdict or a defendant's admission at his plea hearing violates the Sixth Amendment when the judge imposes a discretionary sentence. To be sure, a sentencing court must quantitatively and qualitatively compare the applicable aggravating and mitigating **437 factors, and then weigh and balance those factors to reach a fair sentence. State v. Fuentes, 217 N.J. 57, 72-73, 85 A.3d 923 (2014). We cannot fathom, however, that a sentence set at the highest end of a sentencing range can rationally occur without the finding of at least one aggravating factor. Requiring the finding of aggravating factors to justify a sentence within the prescribed range does not transform those factors into the substantial equivalent of elements of an offense to be decided by a jury. See Natale, 184 N.J. at 486-87, 878 A.2d 724. To hold otherwise would bring crashing down the Code's entire scheme of sentencing based on the distinct nature of the offense and the unique characteristics of the offender, and would be inconsistent with the remedy the Booker Court fashioned for the Federal Sentencing Guidelines.
In Natale, we recognized that "[t]he Code provides for 'a strong judicial role in sentencing,' " id. at 486, 878 A.2d 724 (quoting State v. Roth, 95 N.J. 334, 352, 471 A.2d 370 (1984) ), and "delegates to judges, not juries, the consideration of aggravating factors for the purpose of imposing fair and uniform sentences," ibid. We also acknowledged that "[t]he aggravating factors enumerated in N.J.S.A. 2C:44-1(a), for the most part, represent the traditional factors that judges historically have weighed in sentencing a defendant within the statutory range." Ibid.; see also State v. Humphreys, 89 N.J. 4, 14, 444 A.2d 569 (1982) ("The whole person concept authorizes the sentencing court to comprehend in its deliberations a wide range of information that might otherwise be excluded by evidentiary norms."). Through the identification, weighing, and balancing of mitigating and aggravating factors, the Code "established a consistent framework for guiding sentencing discretion." State v. Maguire, 84 N.J. 508, 530-31, 423 A.2d 294 (1980) ; see also State v. Case, 220 N.J. 49, 63-65, 103 A.3d 237 (2014). This system of "structured discretion" is the means toward the Code's paramount goal of uniformity in sentencing, ensuring "that similarly situated defendants receive comparable sentences." Case, 220 N.J. at 63, 103 A.3d 237.
**438 *574 B.
We now turn to our constitutional jurisprudence that provides the interpretive template for reviewing N.J.S.A. 2C:43-6(b), which gives the sentencing court discretionary authority to impose a period of parole disqualification based on a weighing and balancing of aggravating and mitigating factors.
In Alleyne, the United States Supreme Court applied the dictates of Apprendi to mandatory-minimum sentences. 570 U.S. at 103, 133 S.Ct. 2151. The Court reasoned that, for Apprendi purposes, there is no distinction between facts that increase the sentencing floor or the sentencing ceiling when the sentence imposed is beyond the range authorized by a jury's verdict. Id. at 111-12, 133 S.Ct. 2151. Those facts must be submitted to a jury and proven beyond a reasonable doubt. Ibid. The Court held that "a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." Id. at 112, 133 S.Ct. 2151 (citing Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 ).
In Alleyne, a jury convicted the defendant of using or carrying a firearm in the commission of a violent crime, which mandated a "term of imprisonment of not less than 5 years" under 18 U.S.C. § 924(c)(1)(A)(i). Id. at 103-04, 133 S.Ct. 2151. A conviction for that crime authorized a sentence between five years and life imprisonment. Id. at 117, 133 S.Ct. 2151. The statute also required the imposition of "a term of imprisonment of not less than 7 years" if the defendant brandished a firearm while committing the crime, 18 U.S.C. § 924(c)(1)(A)(ii). Id. at 104, 133 S.Ct. 2151. The verdict sheet, however, did not indicate whether the jury had found that the defendant had brandished a firearm. Id. at 104, 133 S.Ct. 2151. Relying on Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), which held that brandishing was a sentencing factor, the sentencing court found by a preponderance of the evidence that the defendant brandished a firearm and imposed a seven-year mandatory-minimum term. Ibid.
**439 The Alleyne Court determined that Harris could not be reconciled with Apprendi and overruled Harris. Id. at 116, 133 S.Ct. 2151. In doing so, the Supreme Court determined that the fact of brandishing a firearm triggers a mandatory-minimum sentence and therefore "aggravates the legally prescribed range of allowable sentences." Id. at 112, 115, 133 S.Ct. 2151. Accordingly, brandishing "constitutes an element of a separate, aggravated offense that must be found by the jury." Id. at 115, 133 S.Ct. 2151.[3] The Court noted that "the essential Sixth Amendment inquiry is whether a fact is an element of the crime." Id. at 114, 133 S.Ct. 2151. Thus, "[j]uries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range and does so in a way that aggravates the penalty." Id. at 113 n.2, 133 S.Ct. 2151.
The Supreme Court emphasized the limits of its holding: "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." Id. at 116, 133 S.Ct. 2151. The Court further noted that while factfindings " 'within limits fixed by law' ...
*575 may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing." Id. at 113 n.2, 133 S.Ct. 2151 (quoting Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ). The approach in Alleyne, the Court concluded, is "wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law." Id. at 117, 133 S.Ct. 2151.
In State v. Grate, we applied Alleyne to strike down a statute that authorized the automatic imposition of a mandatory-minimum **440 sentence based solely on a judicial finding of a fact. 220 N.J. at 323-24, 106 A.3d 466. In that case, a jury convicted the two defendants of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and third-degree unlawful possession of a weapon at an educational institution, N.J.S.A. 2C:39-5(e)(1).[4] Id. at 323, 106 A.3d 466. Based on the handgun possession conviction, N.J.S.A. 2C:39-5(i) required that the sentencing court impose a minimum term of parole ineligibility of five years if it determined that "[t]here is a substantial likelihood that the defendant is involved in organized criminal activity," N.J.S.A. 2C:44-1(a)(5). See id. at 326-27, 106 A.3d 466. At a sentencing hearing, a law enforcement witness testified that the defendants admitted that they were members of the local chapter of a notorious street gang. Id. at 326, 106 A.3d 466. The court found that the defendants were involved in organized criminal activity and, as required by N.J.S.A. 2C:39-5(i), imposed a mandatory five-year period of parole disqualification. Id. at 326-27, 106 A.3d 466.
We declared that N.J.S.A. 2C:39-5(i) was unconstitutional in light of Alleyne because the statute "unambiguously require[d] the imposition of a mandatory minimum sentence based on a judicial finding of fact." Id. at 336, 106 A.3d 466. We nevertheless determined that the sentencing court could consider aggravating factor five along with other relevant factors in imposing a sentence within the statutory range. Id. at 337-38, 106 A.3d 466.
IV.
A.
In light of Alleyne, we now consider the constitutionality of N.J.S.A. 2C:43-6(b) and the continuing vitality of State v. Abdullah, 184 N.J. 497, 512, 878 A.2d 746 (2005). We begin with N.J.S.A. 2C:43-6(b), which provides that,
**441 where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors ..., or the court finds that the [fifth[5] ] aggravating factor ... applies, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a., ... during which the defendant shall not be eligible for parole.
[ (emphasis added).]
In Abdullah, we upheld the constitutionality of a discretionary period of parole ineligibility imposed pursuant to N.J.S.A. 2C:43-6(b). 184 N.J. at 512, 878 A.2d 746. In that case, the trial court sentenced the defendant on a burglary conviction to a *576 ten-year prison term with a five-year period of parole disqualification pursuant to N.J.S.A 2C:43-6(b). Id. at 508, 878 A.2d 746. We explained that "[i]n making the discretionary decision whether to impose a parole disqualifier, 'the court balances the same aggravating and mitigating factors used to determine the' length of the sentence, but applies a stricter standard that reflects the serious impact that a parole disqualifier will have on the 'real time' " served by the defendant. Id. at 509, 878 A.2d 746 (quoting State v. Kruse, 105 N.J. 354, 359, 521 A.2d 836 (1987) ). We also observed that the aggravating and mitigating factors "are the traditional factors that courts always have considered in determining an appropriate sentence" and "were neither intended by the Legislature to constitute elements of a crime nor were they transformed into constitutional elements when the judge used them to justify imposing a parole disqualifier." Id. at 511-12, 878 A.2d 746 (citing Natale, 184 N.J. at 486, 878 A.2d 724 ).
In affirming the constitutionality of N.J.S.A 2C:43-6(b), however, Abdullah relied on two cases that are no longer good law -- Harris, which has been explicitly overruled by Alleyne, and State v. Stanton, 176 N.J. 75, 820 A.2d 637 (2003), which has been **442 implicitly overruled by both Alleyne and Grate.[6] See id. at 512, 878 A.2d 746. That Abdullah can no longer rest on the pillars of Harris or Stanton does not mean that N.J.S.A. 2C:43-6(b) does not have a sturdy constitutional foundation.
As we will discuss, N.J.S.A. 2C:43-6(b) passes constitutional muster in the wake of both Alleyne and Grate.
B.
A defendant convicted of second-degree conspiracy to distribute cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:5-2, is subject to an ordinary-range sentence of five to ten years' imprisonment, N.J.S.A. 2C:43-6(a)(2), and a parole ineligibility range of zero to five years, N.J.S.A. 2C:43-6(b). In setting the appropriate sentence in either range, the sentencing court must engage in several steps of discretionary decisionmaking. First, the court must determine whether any of the aggravating factors or mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b) are supported by credible evidence in the record. See Natale, 184 N.J. at 487, 878 A.2d 724. Second, the court must assign an appropriate weight to any established factor. See Fuentes, 217 N.J. at 72-73, 85 A.3d 923. Third, the court must balance any aggravating factors against any mitigating factors and decide whether one set of factors outweighs the other. See id. at 72, 85 A.3d 923. In the case of an ordinary-term sentence, "when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range."
**443 Natale, 184 N.J. at 488, 878 A.2d 724. In the case of imposing a minimum period of parole ineligibility under N.J.S.A. 2C:43-6(b), the court must be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors," and even then the court is not required to impose such a sentence.
*577 The point of this discussion is to underscore the highly discretionary nature of the sentencing process and to distinguish the mandatory-minimum sentence imposed in this case from the mandatory minimums imposed in both Alleyne and Grate. Here, the jury's verdict authorized a sentence within the ordinary-term and mandatory-minimum term ranges with the ultimate sentence depending on the court's exercise of discretion in finding, weighing, and balancing the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b). As the Court explained in Blakely, in a statutory scheme that allows a judge to punish a burglar within a range of ten to forty years, the Constitution places no bar on the imposition of a sentence at the top of that range based on judicial factfindings.[7] 542 U.S. at 309, 124 S.Ct. 2531. The Court undoubtedly expected that aggravating factors would be necessary to justify a high-end sentence; otherwise, such a sentence would not survive review under a reasonableness analysis. See Booker, 543 U.S. at 261-62, 125 S.Ct. 738. Moreover, in fashioning a remedy for the invalidated Federal Sentencing **444 Guidelines, the Court provided examples of discretionary judicial factfindings permissible within the prescribed range that would "maintain[ ] a strong connection between the sentence imposed and the offender's real conduct." Booker, 543 U.S. at 246, 252, 125 S.Ct. 738.
In Alleyne, the judicial finding of a fact at sentencing -- brandishing a firearm -- automatically triggered a seven-year mandatory-minimum term beyond the five-year mandatory-minimum sentence authorized by the jury's verdict. Alleyne, 570 U.S. at 117, 133 S.Ct. 2151. In Grate, the judicial finding of a fact at sentencing -- the substantial likelihood that the defendant was involved in organized criminal activity -- automatically triggered a five-year mandatory-minimum term beyond the flat-sentence range authorized by the jury's verdict. See Grate, 220 N.J. at 323, 106 A.3d 466. In both Alleyne and Grate, a fact found by a judge at sentencing -- a fact not submitted to a jury -- automatically determined the period of parole ineligibility and therefore was the equivalent of an element of the offense for Sixth Amendment purposes.
In contrast, here, no fact found by the sentencing court required the imposition of a mandatory-minimum sentence. Judge Steele found three aggravating factors -- the risk that defendant will reoffend, the substantial likelihood defendant was involved in organized criminal activity, and the need for deterrence; and two mitigating factors -- defendant's lack of a prior juvenile or criminal record and his conduct was the result of circumstances unlikely to recur. Judge Steele did not just quantify those factors but assigned each weight, and qualitatively evaluated and balanced *578 them. Only after taking those steps did Judge Steele exercise her discretion and find clearly and convincingly that the aggravating factors substantially outweighed the mitigating factors in imposing a mandatory-minimum sentence within the statutory range. The aggravating factors were not elements of a crime but were traditional sentencing factors.
This is the precise type of permissible, discretionary sentencing envisioned by Blakely and Booker that does not run afoul of the **445 Sixth Amendment. Defendant -- like every citizen who is presumed to know the law -- knew that conspiring to distribute a large quantity of cocaine exposed him to a potential sentence of ten years with a five-year parole disqualifier. See Blakely, 542 U.S. at 309, 124 S.Ct. 2531. The sentence imposed -- an eight-year term with a four-year parole disqualifier -- fell within the range authorized by the jury's verdict and the applicable statute.
Admittedly, without the finding of an aggravating factor -- just a single step in the sentencing process -- a mandatory-minimum term cannot be sustained under N.J.S.A. 2C:43-6(b). But the same is true for a sentence at the top of the ordinary range under N.J.S.A. 2C:43-6(a)(2). This Court could not uphold, as reasonable, a sentence at the very top of the range for a drug offense without the finding of at least one aggravating factor. That is, if the defendant is a first-time offender, who is not likely to reoffend, and the need for deterrence is not present -- the imposition of the most severe possible sentence would be arbitrary. A rational system of justice requires differentiating among offenders -- based on their backgrounds and the nature and circumstances of their offenses -- within the range authorized by the jury verdict. See N.J.S.A. 2C:1-2(b)(6) (stating that one of Code's general purposes is "[t]o differentiate among offenders with a view to a just individualization in their treatment"); see also Alleyne, 570 U.S. at 113 n.2, 133 S.Ct. 2151 (noting that within range authorized by law, judges may make factfindings "to select sentences that are more severe than the ones they would have selected without those facts" without violating Sixth Amendment). The authorized range here allowed for the exercise of judicial discretion to impose a sentence that fit the whole person -- the defendant who stood before the court.
We reject defendant's argument that such considerations as the risk that defendant will reoffend and the need for deterrence become elements of the offense when the court weighs whether to impose a mandatory-minimum sentence. In the sentencing context, the aggravating factors, including the likelihood of defendant's **446 involvement in organized criminal activity, along with the mitigating factors, are legitimate considerations in setting a fair sentence within the ordinary range and the mandatory-minimum range. See Grate, 220 N.J. at 337, 106 A.3d 466.
Accordingly, we conclude N.J.S.A. 2C:43-6(b) and the mandatory-minimum sentence imposed under that statute pass muster under Alleyne and Grate and do not violate the Sixth Amendment.
V.
For the reasons expressed, we affirm the judgment of the Appellate Division.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

The relevant facts are set forth in the written opinion of the Honorable Susan J. Steele, P.J.S.C., who presided at the second sentencing proceeding in this case.

Although Judge Steele did not utter the words that she was "clearly convinced" that the aggravating factors substantially preponderate over the mitigating factors, she quoted the "clearly convinced" standard of the statute before pronouncing sentencing, leaving no doubt that she was clearly convinced.

The Alleyne Court rejected Harris's holding that because the jury verdict triggered a sentencing range of five years to life imprisonment, a seven-year mandatory-minimum sentence was permissible with a judicial finding of brandishing. Id. at 114-16, 133 S.Ct. 2151.

The defendants' convictions for possessing a weapon at an educational institution were reversed because of a flawed jury instruction. Id. at 323, 106 A.3d 466.

A sentencing court may consider aggravating factor number five when "[t]here is a substantial likelihood that the defendant is involved in organized criminal activity." N.J.S.A. 2C:44-1(a)(5). This is not a case in which the sentencing court relied solely on aggravating factor five to impose a discretionary parole-ineligibility period.

Stanton upheld a statute requiring the sentencing judge to impose a minimum parole-ineligibility period of three years in a vehicular homicide case if the judge concluded that the defendant committed the homicide while driving under the influence of alcohol or drugs. 176 N.J. at 78-79, 820 A.2d 637. There is no meaningful distinction between Grate and Stanton. The State concedes that Stanton is no longer good law in light of Alleyne and Grate. To be clear, the rationale for Stanton's imposition of an automatic parole disqualifier based on judicial factfinding can no longer be constitutionally sustained.

Defendant focuses on the following language in footnote eight in Blakely to suggest that the Constitution forbids both automatic and discretionary parole disqualifiers based on judicial factfindings: "Whether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone [in Blakely ] does not authorize the sentence." 542 U.S. at 305 n.8, 124 S.Ct. 2531. However, in the present case, the four-year parole disqualifier is no more of "a sentence enhancement" than a top-of-the-range sentence. Both are in the range authorized by the jury's verdict. Moreover, a period of parole disqualification may not result in a greater "real time" sentence than a flat term. It is unlikely that a defendant would serve less prison time with a five-year term with a two-year parole disqualifier than with a flat ten-year term. The argument that, in the exercise of a court's sentencing discretion, aggravating factors are a permissible consideration for setting a flat-term sentence but not for a period of parole disqualification is not a constitutionally sound approach.