**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5530-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MIKIEL A. ADL,

    Defendant-Appellant.

_____

Argued May 6, 2019 – Decided August 7, 2019

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 11-07-1083, 11-07-1088 and 11-12-1872.

Lauren S. Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Lauren S. Michaels, of counsel and on the briefs).

Jane C. Schuster, Assistant Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, of counsel and on the briefs).

PER CURIAM

Defendant Mikiel Adl was indicted for controlled dangerous substance (CDS) and weapons offenses arising out of a warrantless search of a house in Edison. Following the trial court's denial of his motion to suppress evidence seized in that search, defendant reached a global plea agreement involving that indictment and two other indictments. He pled guilty to second-degree conspiracy to distribute CDS while in possession of a firearm and second-degree certain persons not to possess a weapon, which both arose out of the warrantless search, and second-degree witness tampering. In accordance with the plea agreement, he was later sentenced to an aggregate prison term of twelve years with a six-year period of parole ineligibility. Pursuant to Rule 3:5-7(d), defendant preserved his right to appeal the denial of his suppression motion.

Defendant raises the following arguments on appeal:

> POINT I
>
> BECAUSE NEITHER THE ARREST WARRANT FOR A NON-RESIDENT NOR CONSENT OR APPARENT AUTHORITY ALLOWED POLICE TO ENTER AND SEARCH THE HOME, THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.
>
> > A. The Police Entry Into The Dwelling Cannot Be Justified By The Arrest Warrant For Non-Resident Bradley.

A-5530-16T3

B. Adl's Act Of "Stepping Aside" For The Police Did Not Equate To Consent To Enter.

C. Adl's Act Of Answering The Door Did Not, By Itself, Provide The Police With A Reasonable Basis To Believe That He Had Apparent Authority To Consent To A Search Of The Premises.

D. The State Has Waived Any Exigent-Circumstances Argument By Declining To Raise It Below.

POINT II

BECAUSE THE IMPOSITION OF THE DISCRETIONARY PAROLE BAR VIOLATED ALLEYNE V. UNITED STATES, THE PAROLE DISQUALIFIER ON THE WITNESS-TAMPERING COUNT MUST BE VACATED. IN THE ALTERNATIVE, BECAUSE THE SENTENCING JUDGE IMPOSED A DISCRETIONARY PAROLE BAR WITHOUT ARTICULATING ITS REASONS FOR DOING SO, RESENTENCING IS REQUIRED.

A. The Imposition Of The Discretionary Parole Bar Violated Our State And Federal Constitutions.

B. Alternatively, The Sentencing Judge Imposed The Discretionary Parole Bar Without Making The Requisite Findings, And Therefore, Resentencing Is Required.

Prior to oral argument, we requested the parties to submit supplemental briefs addressing the implications of our decision in State v. Bradley, Nos. A-

3

3707-15, A-0060-16 (App. Div. Sep. 28, 2018), <u>certif. denied</u>, 237 N.J. 318 (2019), where we reversed the decision of a different trial court denying a similar motion to suppress evidence arising from the same warrantless search that defendant sought to suppress, and our Supreme Court's decision in <u>State v. Kiriakakis</u>, 235 N.J. 420 (2018), regarding the constitutionality of imposing a period of parole ineligibility on the witness tampering conviction under N.J.S.A. 2C:43-6(b) without a jury trial.  In his submission, defendant argues:

> POINT I
>
> THE COURT PROPERLY RECOGNIZED IN <u>BRADLEY</u> THAT THE EXACT SAME ENTRY AND SEARCH AT ISSUE IN THIS CASE WAS UNCONSTITUTIONAL, AND BECAUSE THE FACTS ADDUCED AT BRADLEY'S AND ADL'S SUPPRESSION HEARING[S] WERE LEGALLY INDISTINGUISHABLE.  SUPPRESSION IS REQUIRED.
>
> POINT II
>
> ALTHOUGH THE ISSUE RAISED IN POINT [II A] OF DEFENDANT'S OPENING BRIEF IS CONTROLLED BY THE SUPREME COURT'S DECISION IN <u>STATE V. KIRIAKAKIS</u>, RESENTENCING IS STILL REQUIRED FOR THE REASONS EXPRESSED IN POINT [II B].

Having considered these arguments in light of the applicable law and the record, we reverse the denial of defendant's motion to suppress based on

4

essentially the same reasoning we followed in <u>Bradley</u>, as applied to the present record. Accordingly, we vacate the convictions for second-degree conspiracy to distribute CDS while in possession of a firearm and second-degree certain persons not to possess weapons, and remand so that defendant can move to vacate his guilty pleas. That being said, for the sake of completeness, we conclude the record does not support his contention that the court did not set forth its reasons for imposing a discretionary parole disqualifier for the witness tampering charge – which he now concedes did not violate his constitutional rights.

I

Since the events leading up to the law enforcement officers' decision to conduct the warrantless search were fully detailed in <u>Bradley</u>, we need not repeat them here. Suffice it to say, that more than ten police officers went to the Edison house to execute an arrest warrant against Malcom A. Bradley – believing he was present in the house – who was accused of fatally shooting a victim while they were in separate cars waiting at a stoplight in Plainfield. As a result of the evidence seized during the warrantless search, defendant and five co-defendants, including Bradley, were charged in forty-nine counts of Indictment No. 11-07-01083. Defendant was named in eight of those counts; CDS and weapons

offenses, and a charge of second-degree conspiracy to distribute CDS while in possession of a firearm, N.J.S.A. 2C:39-4.1 and 2C:5-2. On that same date, the one-count Indictment No. 11-07-01088, also arising from the warrantless search, charged him with second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7.

Defendant moved to suppress the evidence seized in the warrantless search. At the suppression hearing, the State presented the sole testimony of Sergeant Michael Triarsi of the Union County Prosecutor's Office. He stated that at 11:44 p.m. on March 25, 2011, possessing an arrest warrant, he knocked on the door of a house in Edison to apprehend Bradley. He was wearing plain clothes and had a police badge around his neck. Law enforcement did not know that defendant was present in the house nor did they suspect him of any wrongdoing at that time.

According to Sgt. Triarsi, a man, who he later identified as defendant, opened the door. Sgt. Triarsi asked, "where is he [?]" and defendant stepped to the side, which Sgt. Triarsi said he understood to mean "[c]ome on in." The officers located Bradley in the den located to the right of the front door. The officers found a handgun "underneath" Bradley and observed narcotics, baggies, and "things of that nature" in his immediate vicinity. The police arrested

Bradley, secured defendant and his girlfriend Heather Ganz, along with three other occupants, and applied for a search warrant. Bradley admitted to possession of the handgun and the narcotics in his vicinity, but denied possession of anything else in the house. During the subsequent warrant search, additional contraband was found.

In addition to Sgt. Triarsi's testimony, the State played the home surveillance video, which it obtained from co-defendant Ganz. The video was not played at Bradley's motion to suppress hearing. Although the video is blurry and interrupted by flashes of light, it shows that when Sgt. Triarsi knocked on the front door there were two other law enforcement officers on the steps directly behind him. The officers do not appear to have their guns drawn, although they are holding their right hands close to their sides. It appears from the video that after defendant opened the door, he moved left, and Sgt. Triarsi and two officers on the steps entered the residence followed by six other officers, some of whom appear to be in uniform.

Defendant was the only witness presented on his behalf. He testified that as he opened the door to leave the house the police shined a light in his face, threw him to the ground and handcuffed him. Although he was dating Ganz at

A-5530-16T3

the time of the search, he denied having the authority to let anyone into the house and said that it was not his intention to let the police enter.

After reserving decision, the court issued an order and a written decision denying the motion to suppress.[1]  The decision was based upon the court's assessment of whether there was an exception to the prohibition against warrantless searches because defendant gave third-party consent to the police to search the house.  Illinois v. Rodriguez, 497 U.S. 177, 186 (1990).  The court found the police officers' belief that defendant had the authority to consent to a search was objectively reasonable in view of the attendant facts and circumstances.  Id. at 188-89; State v. Bruzzese, 94 N.J. 210, 219, 221 (1983).  The court held:

> Based on all the testimony presented . . . , the facts establish that [defendant] opened the door in response to the police knocking; he did not object to police entry or state in any way, shape, or form that the police were not allowed to come in; police asked about Bradley's presence and [defendant] stepped aside in response to the question.  The act of stepping aside by [defendant] can fairly be interpreted as granting permission to enter the premises.  The reasonableness of that inference is also buttressed by [defendant's] failure to verbalize any objection to the officer's search into the residence.[]

---

[1] Although the court was aware that Bradley had previously moved in Middlesex and Union vicinages to suppress the evidence obtained from the warrantless search of the house, there is no indication in the record that the court was aware of those rulings or reviewed the transcripts or opinions rendered in those cases.

> Based on these circumstances, the court finds that the police had an objectively reasonable basis to believe that [defendant] possessed common authority over the property to be searched and that his actions and inactions granted the officers consent to enter the residence.

Ten months later, defendant reached a global plea agreement resolving three indictments. He pled guilty to second-degree conspiracy to distribute CDS while in possession of a firearm under Indictment No. 11-07-01083 (count two) and second-degree certain persons not to possess weapons under Indictment No. 11-07-01088 (count one). He also pled guilty to second-degree witness tampering under Indictment No. 11-12-01872 (count three), which arose from a separate incident involving threats defendant made to a woman arising from their mutual involvement in a legal proceeding. In accordance with the plea agreement, defendant was sentenced to: a six-year prison term with a three-year parole bar for second-degree conspiracy to distribute CDS while in possession of a firearm; a five-year prison term with a five-year parole bar for second-degree certain persons not to possess weapons to run concurrent to the CDS offense; and a six-year prison term with a discretionary three-year parole bar under N.J.S.A. 2C:43-6(b) for second-degree witness tampering to run consecutive to the CDS offense and to run concurrent to the certain persons offense.

II

We first address defendant's contention that the trial court erred in denying his motion to suppress because the law enforcement officers' warrantless search in the house was not justified because they did not have valid consent to enter the house to execute the arrest warrant against Bradley. The State disagrees based upon the court's factual findings and legal conclusions that valid consent to enter the house was given by defendant.[2]

Under our standard of review, we must defer to the trial court's findings of fact "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (internal citations omitted); see also State v. Gonzales, 227 N.J. 77, 101 (2016) (recognizing that factual findings will be upheld if there is sufficient credible evidence in the record to support the findings).

---

[2] Issues regarding the scope of the law enforcement officers' execution of the arrest warrant and the search incident to an arrest, and whether there were exigent circumstances to enter the house, were not present in this appeal as they were in Bradley.

A-5530-16T3

However, we owe no deference to the trial court's conclusions of law. See State v. Hinton, 216 N.J. 211, 228 (2013) (internal citations omitted). Nor are we "obliged to defer to clearly mistaken findings . . . that are not supported by sufficient credible evidence in the record." State v. Gibson, 218 N.J. 277 (2014).

To a considerable extent, the court's ruling on the suppression motion embody a mixture of factual and legal determinations, and the significance, under search-and-seizure principles, of factual details that emerged at the hearing. Our scope of review is therefore a mixed one, depending upon the particular facet of the trial court's decision in question.

It is well-established that a resident of property may vitiate the warrant requirement by consenting to a search by the police. State v. Domicz, 188 N.J. 285, 305 (2006); see also State v. Legette, 227 N.J. 460, 474-75 (2017) (ruling the State failed to establish consent to justify the warrantless police search of a residence).

An "essential element" of such consent to conduct a warrantless search is the individual's "knowledge of the right to refuse [it]." State v. Johnson, 68 N.J. 349, 353-54 (1975); see also Legette, 227 N.J. at 475 (reversing a finding of consent by a defendant who had been stopped by an officer on a reasonable suspicion of illegal drug use, because the State had not shown the defendant

"thought he could refuse [the officer's] search into his apartment").  In a noncustodial setting such as the present one, the State does not necessarily have to establish that police officers expressly advised the person who allowed their search of the right to refuse consent, but that burden remains on the State to demonstrate that person's knowledge of right to refuse.  Johnson, 68 N.J. at 354.

"[C]onsent to a warrantless search . . . must be shown to be unequivocal, voluntary, knowing, and intelligent."  State v. Sugar, 108 N.J. 151, 156 (1987).  Consent is a factual question determined by an examination of the totality of the circumstances.  State v. Koedatich, 112 N.J. 225, 264 (1988).

Applying these legal standards, as we did in Bradley, we respectfully disagree with the court's conclusion that defendant's opening of the house's front door and standing to the side, gave the large group of assembled police officers valid consent to enter and search the dwelling.  Sgt. Triarsi did not testify that he or any of the other officers present advised defendant of his right to refuse consent.  Nor did the State establish that defendant was already aware of that right.

The video clearly shows that defendant leaned aside after he encountered the officers at the door.  See State v. S.S., 229 N.J. 360, 374-81 (2017) (clarifying the limited scope of appellate review of factual findings based on

video evidence, but declaring that "[a]ppellate courts have an important role in taking corrective action when factual findings are so clearly mistake – so wide of the mark – that the interest of justice demand intervention"); see also State v. A.M., 237 N.J. 384, 395-96 (2019). This is insufficient proof that he knowingly and voluntarily consented to their search into the dwelling. Wearing garb that identified him as a law enforcement officer, Sgt. Triarsi knocked on the door with several other officers assembled behind him. Rather than identify himself or converse with defendant, Sgt. Triarsi immediately demanded to know "[W]here is he[?]"; referring to Bradley.

The totality of circumstances objectively would have been intimidating or alarming for a citizen opening the door to this encounter. As the Court observed in Johnson, "[m]any persons, perhaps most, would view the request of a police officer to make a search as having the force of law." 68 N.J. at 354. Hence, "[u]nless it is shown by the State that the person involved knew that he had the right to refuse to accede to such a request, his assenting to the search is not meaningful." Ibid.; see also State v. Rice, 115 N.J. Super. 128, 130-31 (App. Div. 1971) (ruling that where a police officer knocked on an apartment door and entered, without any words being spoken between the officer and the person who

opened the door, the search was not with knowing consent and instead was, "[a]t best . . . permitted in submission to authority").

Accordingly, we are constrained to rule that the court's conclusion that defendant's actions and inactions granted the officers consent to enter the residence is unpersuasive and not supported by substantial credible evidence. We thus conclude the consent exception to a warrantless search does not apply.

We likewise are unpersuaded that the record suffices to establish defendant had apparent authority to allow the officers into this private dwelling. The United States Supreme Court has applied the apparent authority doctrine "when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their search is a resident of the premises[.]" Rodriguez, 497 U.S. at 186 (emphasis added); see also Georgia v. Randolph, 547 U.S. 103, 109 (2006) (noting that police may reasonably rely upon consent given by "a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." (emphasis added)).

The Court has warned in this context that Fourth Amendment rights must not be "eroded . . . by unrealistic doctrines of 'apparent authority.'" Stoner v. California, 376 U.S. 483, 488 (1964). The trial court's analysis here threatens

14

such an erosion. It is not objectively reasonable for police to assume that whenever an adult answers a door to a dwelling, the adult has the apparent authority to consent to the police entering.

None of the officers asked defendant if he owned or lived in the house. They obtained no information before entering about his reason for being on the premises. Defendant's mere conduct in opening the door in response to Sgt. Triarsi's knocking, and in thereafter leaning his body away from the officers' path, does not provide sufficient objective indicia that he possessed the right to decide who may enter the premises.

Indeed, the police appeared to know little about the house other than they suspected Bradley was inside. They had no information about who lived there or whether defendant was their relative or a guest of the residents. There simply is not enough evidence in this record to conclude, as a matter of law, that defendant possessed the apparent authority to consent to the police search.

Having concluded that the record or the applicable law does not support the consent exceptions to the warrant requirement, we must consider the ramifications of that conclusion. It is clear that the firearm and CDS that were seized from the house after their illegal warrantless search were "fruits of the poisonous tree" and should have been suppressed. See State v. O'Neill, 193 N.J.

148, 171 n.13 (2007). Consequently, this matter must be remanded to afford defendant an opportunity to withdraw his guilty pleas to three offenses and have the judgment of conviction vacated.

III

In his initial appellate brief, defendant contends a remand is necessary for resentencing because the imposition of a discretionary parole bar on the witness tampering conviction violated Alleyne v. United States, 570 U.S. 99 (2013). However, in his supplemental brief, he acknowledges that our Supreme Court rejected the identical argument in State v. Kiriakakis, 235 N.J. 420, 442 (2018). Yet, he continues to press forward with the alternative argument he initially raised that the court imposed a discretionary parole bar without articulating its reasons for doing so. State v. Bessix, 309 N.J. Super. 126, 129-30 (App. Div. 1998); see also State v. Sainz, 107 N.J. 283, 290 (1987).

Normally, we would not address this issue because we reverse the court's denial of defendant's motion to suppress and, therefore, a remand is necessary so that defendant can withdraw his guilty pleas. However, for the sake of completeness, we address and reject defendant's remaining contention.

The record clearly provides that the court set forth its reasons for imposing defendant's sentence in accordance with the plea agreement. In weighing the

sentencing factors, the court noted defendant's age and his extensive and significant criminal history (including parole violations) and concluded that aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense), applied. The court specifically found that no mitigating factors applied. Thus, there is no basis for a remand based upon alleged errors made at sentencing.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION