# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1489-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.H.-S.,[1]

     Defendant-Appellant.

_____

> Argued October 16, 2024 – Decided November 15, 2024
>
> Before Judges Sumners and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 22-02-0091.
>
> Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the brief).
>
> Timothy Kerrigan, Chief Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic

---

[1] We use initials for the defendant, the victim, and certain witnesses to protect the victim's privacy interests. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

County Prosecutor, attorney; Timothy Kerrigan, of counsel and on the brief).

PER CURIAM

After an initial trial ended in a mistrial because the jury was hung, a second jury found defendant guilty of ten of the seventeen offenses charged: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2A(1); six counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); second-degree endangering the welfare of a child/sexual contact with child by caretaker, N.J.S.A. 2C:24-4(a)(1); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a); and third-degree tampering with a witness, N.J.S.A. 2C:28-5(a)(1). Defendant was sentenced to an aggregate forty-five-year prison term with twenty-five years parole ineligibility.

Defendant appeals, arguing:

> POINT I
>
> THE RECORDED INTERROGATION WAS REPLETE WITH HIGHLY IMPROPER AND INFLAMMATORY REMARKS BY THE INTERROGATING OFFICER IN WHICH HE REPEATEDLY OPINED ON THE VICTIM'S AND DEFENDANT'S CREDIBILITY, REPEATEDLY FORCED THE DEFENDANT TO CATEGORIZE THE VICTIM AS A LIAR, AND REPEATEDLY REGURGITATED THE EXPLICIT ALLEGATIONS OF THE VICTIM. (PARTIALLY RAISED BELOW).

A. Detective Borkowski Repeatedly Opined That [Defendant] Was Guilty and [the victim] Was Telling the Truth and Went into Detail about the Basis for Those Beliefs, Intruding on the Jury's Most Important Factfinding Function.

B. Detective Borkowski Repeatedly Demanded that [Defendant] Label [the victim] a "Liar" if his Version of Events Was True, Which the State is Forbidden From Arguing at Trial.

C. The Repeated Statements by Detective Borkowski Giving Detailed Retellings of the Allegations as Relayed to Him by [the victim] Further Bolstered Her Credibility and Were Grossly Prejudicial.

POINT II

THE TRIAL COURT ERRED IN FORCING THE JURY TO CONTINUE DELIBERATING WHEN IT STATED IT WAS HUNG AFTER FOUR DAYS OF DELIBERATIONS. ADDITIONALLY, THE IMPROPER INSTRUCTION TO CONTINUE DELIBERATING WAS UNDULY COERCIVE, FAILED TO CONFORM TO THE MODEL CHARGE, AND VIOLATED [DEFENDANT'S] RIGHTS TO DUE PROCESS AND A FAIR TRIAL. (PARTIALLY RAISED BELOW).

POINT III

THE TRIAL COURT GAVE UNDUE WEIGHT TO THE GENERAL DETERRENCE FACTOR AND FAILED TO CONDUCT AN ADEQUATE

A-1489-22

YARBOUGH[2] ANALYSIS BEFORE IMPOSING CONSECUTIVE SENTENCES, RESULTING IN AN EXCESSIVE FORTY-FIVE-YEAR SENTENCE. ADDITIONALLY, THE TRIAL COURT FAILED TO HOLD A MANDATORY ABILITY TO PAY HEARING BEFORE IMPOSING FINES AND RESTITUTION TOTALING MORE THAN $40,000.

POINT IV[3]

STATE V. HILL REQUIRES THE REVERSAL OF [DEFENDANT'S] WITNESS TAMPERING CONVICTION.

Considering these contentions in light of the record and applicable law, we affirm defendant's convictions and sentences with the exception of the Sex Crimes Victim Treatment Fund (SCVTF) penalty and the witness tampering conviction and sentence. We reverse and remand the SCVTF penalty because the trial court failed to provide a statement of reasons for the assessment. We reverse the witness tampering offense because the trial court did not instruct the jury that the State must prove defendant intended to obstruct the prosecution as required by our high Court's recent decision in Hill.

---

[2] State v. Yarbough, 100 N.J. 627, 643-44 (1985).

[3] Because State v. Hill, 256 N.J. 266 (2024), was decided after defendant submitted his merits brief, he raised this argument in a Rule 2:6-11(d) letter to the court and addressed the State's opposition in his reply brief.

I.

Interrogation Video

In June 2018, the Passaic County Prosecutor's Office (PCPO) Special Victim's Unit received a report that defendant had sexually assaulted his fifteen-year-old stepdaughter (the victim) for several years beginning when she was ten or eleven years old. The PCPO met with the victim and her mother, wherein defendant's alleged sexual assaults were detailed.

The PCPO went to defendant's workplace, and he voluntarily agreed to go with them to their office to be interviewed. After waiving his Miranda[4] rights, defendant gave a video-recorded statement to PCPO Detective Michael Borkowski. In response to Detective Borkowski's disclosure of the victim's allegations, defendant said he hugged and touched her breast by "mistake." Defendant also admitted he went to her bed on several occasions to give her "kisses," and watched videos in bed with her while "hugging." He characterized the victim as "confused," but did not specifically accuse her of making false allegations.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

Throughout the interview, Detective Borkowski repeatedly told defendant he did not find his story credible. Detective Borkowski advised defendant, "I can't help you if you continuously lie and tell me that something didn't happen when I know and you know that it did." Detective Borkowski later said, "I'm having a hard time believing you," and the reason is "I spoke to [the victim], [and she] gave me details that she wouldn't be able to make up." Borkowski responded to defendant's denials, commenting "[t]hat's not true," and "[d]o you expect me to believe that?" Borkowski also said the victim had "no reason to lie," and she was "very straightforward with me."

About six months before defendant's first trial, the motion court conducted a <u>Miranda</u> hearing to determine the admissibility and voluntariness of defendant's interrogation statement to Detective Borkowski. The court ruled the interrogation statement was admissible at trial, but did not resolve defendant's hearsay contentions, stating they were pretrial issues to be resolved later. The court, however, suggested the parties try to reach an agreement as to what portions of the interrogation statement should be redacted. The court added it would decide if the parties could not agree on "what [statements] can be admitted."

A-1489-22

At trial before a different court, the State moved to admit the interrogation video, with the prosecutor explaining "[defense] [c]ounsel and I have reviewed the [video] and we've agreed to edit certain portions out where there is no speaking between the parties." Defendant did not object to the admission of any interrogation statement by the detective or defendant. After the jury was unable to reach a verdict, a mistrial was declared.

On the first day of the second trial before a different court, the State's admission of the interrogation video was discussed. Defendant did not object to its admission and told the court the video was redacted to remove "dead air" periods when defendant was by himself in the interrogation room. Based on the parties' approved interrogation video, the court instructed the jury about the video it would be viewing. Prior to Detective Borkowski's testimony, the court told the jury:

> During the audio/video recorded interview of [defendant] that you are about to see, there are remarks by the detective conducting the interview, Detective Borkowski, pertaining to the allegations made by [the victim] and the purported credibility of those allegations. During the course of the interrogation, the detective repeats [the victim's] allegations, tells [defendant] that he believes [the victim], and that he, the detective, knows [defendant] did what he is accused of. These statements by the detective constitute an interrogation technique to elicit a response from [defendant]. I am hereby instructing you that any and

7

all remarks by the detective about what is contained in the interrogation video are not evidence and they are not to be considered by you at all during the deliberations, nor may you assume or infer that the police remarks are based upon additional evidence not testified to at trial. While law enforcement officers are permitted to make such statements as part of their interrogation techniques, such statements are not evidence. What, if anything, is depicted in the audio and video recording statement of [defendant] is a question of fact and, as such, is entirely up to the jury to decide.

During defendant's testimony and summation, defense counsel referenced the video, arguing it shows defendant maintained his innocence despite the detective's accusations.

Before us, defendant argues the admission of Detective Borkowski's statements requires reversal of his convictions. Detective Borkowski repeatedly opined on the credibility of both the victim and defendant, prodded defendant to call the victim a liar, detailed the victim's explicit allegations, and argued with defendant. Defendant maintains the detective "demanded" that defendant label the victim a liar and these statements were inadmissible and severely prejudicial. Citing State v. Bunch, 180 N.J. 534, 549 (2004), defendant argues that "[j]ust as an [law enforcement] officer should not be opining on witness credibility, neither should the defendant be forced into doing so." He acknowledges no objection was made at trial, but contends he objected to the admission of the

A-1489-22

interrogation video during the <u>Miranda</u> hearing prior to the first trial, and thus argues the plain error rule should not apply. Defendant rebuts the State's contention the admission of the interrogation video was invited error, claiming there is nothing in the record evincing he acquiesced to the jury viewing it. Rather, he claims he opposed the video's admission at the <u>Miranda</u> hearing, and requesting a limiting instruction before it was shown to the jury does not indicate a desire to admit the video.

Based upon our review of the record, defendant did not object to the admissibility of Detective Borkowski's statements made during the interrogation. While defendant unsuccessfully objected to the admissibility of his interrogation statement based on a <u>Miranda</u> violation, he did not challenge the detective's statements on the grounds that they were prejudicial as he does on appeal. The motion court noted the admissibility of the statements was a pretrial issue for the court to determine if the parties could not agree on redactions. Although the parties reached agreement on "dead air" redactions, defendant never sought to exclude Detective Borkowski's statements regarding the victim's credibility and defendant's lack of credibility. Thus, the State correctly contends invited error applies because of defense counsel's "active participation in the redaction of the interrogation video and the crafting of the

accompanying jury instruction, followed by his affirmative use of the video during [d]efendant's testimony and again in summation."

Under invited error, we do not review a claim of error when a party's statements or conduct were relied upon by the trial court in reaching a decision later appealed. See Brett v. Great American Recreation, 144 N.J. 479, 503 (1996). Defendant had ample opportunity to demand the statements be redacted but chose not to. Because defense counsel advised the court there was an agreement on the interrogation video redactions, the court had no reason to address redactions of statements regarding the victim's and defendant's credibility.

Even if invited error does not apply, plain error applies because defendant did not object to Detective Borkowski's statements at trial. When there is no objection, we must assume "defense counsel did not believe the remarks were prejudicial." State v. Pressley, 232 N.J. 587, 594 (2018) (internal quotations and citations omitted). Under plain error, a trial court error is disregarded on appeal unless it "clearly capable of producing an unjust result." R. 2:10-2.

There is no question that Detective Borkowski's statements would be inadmissible as live testimony because they bolster the credibility of the victim's allegations and attack defendant's credibility. See State v. Lazo, 209 N.J. 9, 24

(2012) ("Neither a police officer nor another witness may improperly bolster or vouch for an eyewitness' credibility and thus invade the jury's province."). But we agree with the State that the statements were admissible to provide context for the detective's interrogation questions and defendant's answers.

As the State points out, we addressed this issue in our unpublished decisions in State v. Quackenbush, No. A-0411-16 (App. Div. July 29, 2019) and State v. Graham, No. A-1111-10 (App. Div. May 16, 2013), where the defendants objected to the admission of law enforcement's interrogation statements questioning the defendant's credibility.[5]  In Graham, we held:

> Where a defendant raises a valid objection based on inclusion of otherwise inadmissible evidence in the video-recording of an interrogation, the court should consider whether redaction is necessary or a limiting instruction directing the jury on permissible and impermissible uses of the testimony will suffice to prevent misuse of the evidence.
>
> [Slip op. at 27.]

In Quackenbush, we found the reasoning in Graham persuasive and affirmed the admissibility of the detective's statements challenging the defendant's credibility

---

[5]  In Quackenbush, citing Trinity Cemetery Ass'n, Inc. v. Twp. of Wall, 170 N.J. 39, 48 (2001) and Rule 1:36-3, we held unpublished opinions are not precedential but that the facts and analysis found therein may shed light on the issues before us.  Slip op. at 31 n.8.

because the trial court properly directed the jurors on the limitations on the State's use of the interrogation statements. Quackenbush, slip op. at 32.

The trial court here followed suit, instructing the jury that

> remarks by the detective about what is contained in the interrogation video are not evidence and they are not to be considered by you at all during the deliberations, nor may you assume or infer that the police remarks are based upon additional evidence not testified to at trial.

As in Quackenbush and Graham, we conclude the admissibility of Borkowski's statements was not error let alone plain error.

## II.

## Jury Deliberations

The jury deliberated on April 1, 4, 5, and 6, 2022 without returning a verdict. On the morning of April 6, the jury sent a note to the court, stating: "We only have a unanimous decision on four charges after reviewing all requested testimony and believe we are hung at this time." Defense counsel moved for a partial verdict and mistrial, arguing that sending the jury back in to deliberate further would cause "injury" to their conscience by "putting pressure" on them. The court disagreed, and instructed the jury:

> Okay. I need you to return to the deliberation room, okay? We have checked the record. You have been — without listening to testimony during the trial and times that you've had playback and I've read back the law,

12

you've done approximately nine and a half to 10 hours of deliberation, which translates to a day and a half, okay? You know, in like terms of the hours we work here. So I'm going to ask you at this time to return to the sixth floor and continue your deliberations.

The next day, the jury found defendant guilty of first-degree aggravated sexual assault, six counts of second-degree sexual assault, second-degree endangering the welfare of a child, third-degree aggravated criminal sexual contact, and third-degree tampering with a witness.

Defendant claims his convictions should be reversed because the trial court erred in "forcing the jury to continue deliberating." He maintains the court's instruction was "coercive" given the jury had already deliberated for ten hours, a reasonable amount of time to determine whether it believed the testimony of the victim or defendant. Defendant contends "there is no reason to exclude the time [the jury] spent reviewing evidence from the overall deliberation time the way the State and the trial court have done." And even if the court's direction to the jury to continue deliberating was not error, defendant argues "the trial court's faulty instruction was . . . sufficiently harmful to require reversal." Defendant emphasizes that the instruction did not reflect "the model charge's language that the jurors should 'not surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of [their]

13

fellow jurors, or for the mere purpose of returning a verdict.'" Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 14, 2013). Defendant also argues the court's instruction "could be viewed as castigating the jury for not having spent enough time deliberating, both intimidating the jury about the prospects of lengthy, continued deliberations and shaming it for being in the unresolved position it was in."

We are unpersuaded by defendant's contentions. We do not view the court's instruction to the jury to continue deliberating as coercive or intimidating, as defendant paints it.

A trial judge has the discretion to require further deliberations after the jury announces its inability to reach a verdict; however, the exercise of that discretion is not appropriate "if the jury has reported a definite deadlock after a reasonable period of deliberations." State v. Czachor, 82 N.J. 392, 407 (1980); see also State v. Ross, 218 N.J. 130, 145 (2014). If a jury communicates that it is deadlocked, the trial court should consider "such factors as the length and complexity of trial and the quality and duration of the jury's deliberations." Ross, 218 N.J. at 144 (quoting Czachor, 82 N.J. at 407). If the deadlock is "clearly intractable," then "the jury is deadlocked and a mistrial should be declared." Id. at 145 (quoting State v. Figueroa, 190 N.J. 219, 237 (2007)).

14

The principle that a jury verdict "must not be the product of coercion" is paramount and, thus, "appellate review of a trial court's supplemental instruction is 'guided by a concern for the weighty role that the judge plays in the dynamics of the courtroom.'" Id. at 144 (quoting Figueroa, 190 N.J. at 238). Trial courts have the discretion to ensure a verdict is "free from untoward interference from any source," including from the court. Id. at 145(quoting State v. Shomo, 129 N.J. 248, 257 (1992)).

The jury's note stated we "believe we are hung at this time." This is not indicative of intractability or a deadlock. More importantly, however, the court did not abuse its discretion by concluding ten hours of actual deliberation for a trial in which defendant was charged with seventeen sexual offenses and witness tampering, was unreasonably short. See Figueroa, 190 N.J. at 239 (noting the "brevity of deliberations" that amounted to a single day in a trial with various charges, including murder and attempted murder). Moreover, "it is not always necessary for the trial court" to inquire of the jury whether further deliberations will likely result in a verdict, particularly when "the jury had only been deliberating briefly." Id. at 240. The court appropriately considered the length of the deliberations and was in the best position to determine whether ten hours was unreasonably short given the gravity of the charges and nuances of the case.

15

Though a "jury charge is presumed to be proper when it tracks the model jury charge" verbatim, State v. Cotto, 471 N.J. Super. 489, 543 (App. Div. 2022) (citation omitted), charges that do not recite the model charges are not necessarily reversible error. The test is "whether the supplemental instruction has improperly influenced the dissenting jurors to change their votes." Figueroa, 190 N.J. at 238. The court's charge did not single out dissenting jurors, impose a deadline, nor state that a deadlock would necessitate a retrial. See id. at 237. Nor did the charge suggest "a failure to agree on a decision will reflect adversely on the sophistication, intelligence, impartiality, and competence of the jurors." State v. Adim, 410 N.J. Super. 410, 426 (App. Div. 2009) (quoting Czachor, 82 N.J. at 405). The court's instruction merely acknowledged the "approximately nine and a half to [ten] hours" of time the jury deliberated and asked them to return to the jury room. The jury was instructed to continue deliberating only one time. The instruction was brief, gracious, and not coercive: "I'm going to ask you at this time to return to the sixth floor and continue your deliberations." Thus, defendant's convictions should not be overturned on this basis.

## III.

## Witness Tampering

Between the first and second trial, the victim disclosed to law enforcement that shortly after defendant was arrested and jailed, she received a hand-written letter from defendant. The letter states: "I know that I deserve to go to prison for the rest of my life or be killed maybe." Defendant wrote he was "embarrassed" and "disgusted," and asked the victim to forgive him and to "help me get out of here" and "if you don't do it they are going to send me to prison and then nothing can be done." Defendant warned her that if she decided to "help" him, she "ha[s] to be strong." The letter further pleads: "I need your help no one else in this world can help me more than you take me out of here please daughter for your siblings." The letter prompted the State to obtain a superseding indictment to include a witness tampering charge.

Defendant's wife, the victim's mother, also disclosed that defendant wrote her a letter around the same time he wrote the victim. This letter was not included in the witness tampering charge against defendant.

At trial, defendant admitted writing the letter to the victim from jail. He testified that his forgiveness request to the victim related the time when he got angry with her for disobeying him, and claimed he wrote he "deserve[d] to go

A-1489-22

to prison" for the rest of his life because he felt as if he was not a good father. Defendant maintained he never sexually assaulted the victim.

The court charged the jury on witness tampering in accordance with the model jury charge. The relevant portion of the charge stated: "The second element the State must prove beyond a reasonable doubt is that the defendant knowingly engaged in conduct that a <u>reasonable person would believe</u> would cause a witness to, one, testify or inform falsely, and/or, two, withhold any testimony, information, document, or thing." (Emphasis added). The jury found defendant guilty of witness tampering.

Defendant argues his witness tampering conviction should be reversed because the model jury charge read by the trial court did not follow the principle pronounced in <u>Hill</u>, which was decided while his appeal was pending and applies to his conviction. We agree.

The <u>Hill</u> Court recognized "the heartland of witness tampering prosecutions either do not involve speech at all," or "prosecute unprotected speech," like that integral to criminal conduct. 256 N.J. at 285. The Court held:

> [A] defendant may be found guilty of witness tampering for <u>explicitly</u> threatening a witness not to cooperate with an investigation or asking a witness to testify falsely, N.J.S.A. 2C:28-5(a)(1); withhold testimony, (a)(2); elude legal process, (a)(3); absent

A-1489-22

himself from a proceeding, (a)(4); or otherwise obstruct such a proceeding, (a)(5).

[(Id. at 286-87) (emphasis added).]

The Court concluded that when the State's theory of witness tampering is based on "the contents" of a "facially innocuous" letter, meaning it "is not integral to the criminal act of tampering with a witness on its face," the defendant can be found guilty of witness tampering only if he

> intended his letter to cause [the victim recipient] to testify or inform falsely, withhold testimony, elude legal process summoning her to testify or supply evidence, absent herself from any proceeding or investigation to which she had been legally summoned, or otherwise obstruct, delay, prevent or impede an official proceeding or investigation. If a jury finds beyond a reasonable doubt that defendant had such intent, then his speech was integral to the criminal conduct of witness tampering and he may be constitutionally convicted for its contents.
>
> [(Id. at 291-92).]

The Court therefore held a witness tampering jury charge must include the subjective intent requirement where the heart of the allegations involves a facially innocuous letter that did not explicitly ask or cajole the victim to commit any of the acts enumerated above. Id. at 291.

We reject the State's contention that Hill does not apply here because defendant's letter to the victim was not facially innocuous. Like Hill,

19

defendant's letter does not ask the victim to testify falsely or obstruct the trial. To be sure, defendant asks her to "help me get out of here," several times, and acknowledges that "no one else in this world can help me more than you." Though there are legal methods to get someone out of jail, it is not clear how the victim, a minor, could have helped defendant short of recanting her allegations. However, as defendant contends, the letter "does not ask her to lie on the stand, or to not appear at the trial, or to interfere with another witness's testimony, nor does it threaten her." Accordingly, as prescribed by Hill, since the jury was not instructed to find defendant subjectively intended the letter to cause the victim not to testify that he sexually assaulted her, the witness tampering conviction and the consecutive four-year flat sentence must be vacated. That charge is remanded for a new trial consistent with this opinion.

IV.

Sentence

At sentencing, the trial court found aggravating factor three, the risk that defendant would commit another offense, N.J.S.A. 2C:44-1(a)(3), reasoning defendant denied committing the offenses of which he had been found guilty, and showed no desire to engage in therapy or other measures to prevent the acts from recurring. The court also found aggravating factor nine, the need to deter,

N.J.S.A. 2C:44-1(a)(9), reasoning defendant's sentence will send a message to the community and defendant that such behavior will not be tolerated. The court found only one mitigating factor, defendant had no prior record, N.J.S.A. 2C:44-1(b)(7).

On the first-degree aggravated sexual assault conviction, the court imposed a sentence of thirty-five years with twenty-five years parole ineligibility. For the six counts of second-degree sexual assault, which were based on an offense committed on a different date than the aggravated sexual assault, the court imposed a consecutive six-year sentence. Applying Yarbough and State v. Torres, 246 N.J. 246 (2021), the court reasoned consecutive sentences were justified for crimes that were independent of each other. Concurrent sentences were imposed on the remaining convictions. The court also imposed a consecutive four-year flat sentence on the witness tampering charge in accordance with N.J.S.A. 2C:28-5(e). In sum, the court determined the forty-five-year aggregate sentence with a thirty-year parole disqualifier was just, considering the damage to the victim, the nature of the crime, and the message it would send to the community.

As for the imposition of fines, the court noted defendant was thirty-six years old, worked as a cook for thirteen years, and earned $900 per week.

Defendant was ordered to pay fines and penalties totaling $33,148.50, including $15,268.50 for restitution and $9,750 for the SCVTF penalty, N.J.S.A. 2C:14-10. Regarding the SCVTF penalty, the court merely stated the amount assessed.

Defendant argues his sentences should be vacated because "the trial court gave an improper amount of weight to the general deterrence factor, failed to engage in the required [Yarbough] analysis before imposing consecutive sentences, and imposed extensive fines and restitution without conducting an ability to pay hearing." We disagree.

We review a "trial court's 'sentencing determination under a deferential standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We may "not substitute [our] judgment for the judgment of the sentencing court." Lawless, 214 N.J. at 606. We must affirm a sentence if: (1) the trial judge followed the sentencing guidelines; (2) the findings of fact and application of aggravating and mitigating factors were "based upon competent, credible evidence in the record"; and (3) the application of the law to the facts does not "shock[] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). Consequently, we are unpersuaded that the judge erred in sentencing

defendant as the record supports the judge's findings, and the sentence does not shock our judicial conscience.

Defendant next contends the court erred in imposing restitution and the SCVTF penalty without conducting an ability to pay hearing and providing a statement of reasons for the amounts assessed. We disagree that the court failed to consider defendant's ability to pay but agree it failed to provide a statement of reasons.

A sentencing court may impose an SCVTF penalty against a defendant in any amount "between a nominal figure and the upper limit prescribed by N.J.S.A. 2C:14-10(a) for the degree of the offense at issue." Bolvito, 217 N.J. at 224. In making that determination, a sentencing court "should begin by considering the nature of the offense." Id. at 233. Moreover, courts "should consider the defendant's ability to pay the amount assessed." Id. at 234. "If a substantial penalty is assessed against a defendant who has no realistic prospect of satisfying it, that penalty is destined to become an unsatisfied judgment." Ibid. In determining "a defendant's ability to pay, the sentencing court should look beyond the defendant's current assets and anticipated income during the period of incarceration." Ibid. At sentencing, the "court should provide a statement of reasons when it sets a defendant's SCVTF penalty within the

statutory parameters," which "will apprise the parties, the victim, and the public and will facilitate appellate review." Id. at 235.

The trial court considered defendant's ability to pay by noting that before he was held for pretrial detention, he had been steadily employed for thirteen years, earning a weekly salary of $900. The court, however, did not provide a statement of reasons for the SCVTF penalty. We thus vacate only that portion of defendant's judgment of conviction that imposed a $9,750 SCVTF penalty and remand for the court to state the reasons for imposing the SCVTF penalty.

To the extent we have not addressed any other arguments raised by defendant, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1489-22